JAMES M. NELSON v. NATIONAL BISCUIT COMPANY.

217 N. W. 2d 734.

April 26, 1974—No. 44217.

*Robb, Van Eps & Gilmore* and *Michael D. Aafedt,* for relator.
*David S. Barnett,* for respondent.

PER CURIAM.

Writ of certiorari upon the relation of the employer to review a decision of the Workmen's Compensation Commission awarding employee compensation for temporary total disability. There are two issues: (1) Whether there was sufficient evidence to warrant a finding that employee was totally disabled from October 1, 1969, to the date of the hearing, May 25, 1972, and (2) if so, whether employee is nonetheless barred from receiving the compensation for temporary total disability on the ground that an employee cannot concurrently receive retraining benefits and temporary total disability benefits. We affirm.

Employee had to have his right arm amputated in February 1969, as a result of an injury he sustained while working as a machine operator for employer. Employee returned to work in May, 1969, not as a machine operator but as a janitor and groundskeeper for employer. Shortly thereafter employee again began doing work as a machine operator but, because of his lack of one arm, was of limited effectiveness. In August 1969, employee underwent surgery on his arm at Hennepin County General Hospital, surgery necessitated by the development of neuromas (nerve tumors) at the stump of his arm. Following surgery employee decided to discontinue his employment with employer and take a course in electronics—which employer voluntarily agreed to pay for—hoping thereby to prepare himself for another job better suited to one with his handicap. However, because of difficulties related to his arm, employee was unable to complete this course. These difficulties included constant pain in the arm and frequent sharp pain caused by recurring neuromas. To help relieve these pains employee had to take large doses of a hard narcotic, Demerol, which made him drowsy and ineffective as a student. He also had to submit to frequent sur-

gery at Hennepin County General Hospital for these neuromas.[1] Notwithstanding the continuance of these difficulties, employee, in August 1970, commenced training as a landscape technician. Employer began making payments for this retraining only after a hearing in 1971. While continuing this course, employee, in the summer of 1971, went to see Dr. Don Long, a neurologist at the University of Minnesota Hospitals. In April 1972, about the time employee was completing his course in landscape technology, Dr. Long implanted an electrical stimulator in the stump of employee's right arm. As of the date of the hearing on employee's claim for temporary total disability, it appeared that this last operation had succeeded where the numerous previous operations had failed.

■ We do not believe there is any merit to employer's contention that the evidence was insufficient to warrant the finding that employee was temporarily totally disabled from October 1, 1969, to the date of the hearing, May 25, 1972. During this entire period employee had recurrent severe pain, caused by neuromas, which numerous surgical operations failed to successfully alleviate. According to the only medical witness, Dr. Long, employee had four main handicaps during this period that together resulted in his total disability which would prevent him from holding any full-time job: (1) the lack of a right arm, (2) the severe pain, (3) the frequent surgical operations, and (4) the drowsiness caused by the drugs. An employment expert from the Department of Manpower Services testified similarly, saying that these handicaps made employee unemployable during the relevant time period.

It is true that employee was able to attend electronics school for awhile and was able to complete his course in landscape technology but this does not mean that employee was employable dur-

---

[1] In all, employee underwent nine operations of this nature. The dates of these operations were as follows: August 22, 1969; October 29, 1969; January 13, 1970; March 18, 1970; July 24, 1970; September 28, 1970; February 18, 1971; April 18, 1971; July 8, 1971.

ing this time period. In fact, employee was unable to complete the electronics course because of his difficulties and, further, employee may well have been unable to complete the landscape-management course had his teachers not given him leeway to miss classes whenever the pain was too severe or whenever he had to undergo surgery.

It is also true that employer introduced evidence that it would have rehired employee at any time but it appears that this work would have been the same type of makeshift work that employer had employee doing when employee first resumed employment after the amputation. Further, in view of the evidence about employee's handicaps during this period and the difficulties he had completing his retraining, it is doubtful that employee could have satisfactorily performed this work.

■ The second issue is an issue of first impression in this court. Employer, having paid the maximum for retraining under the statute, 104 weeks of benefits, contends that for these weeks employee is barred from receiving compensation for temporary total disability on the ground that an employee cannot concurrently receive retraining benefits and temporary total disability benefits.

Retraining benefits were formerly dealt with in Minn. St. 1965, § 176.101, subd. 3(45), which read as follows:

"In addition to the compensation provided in this chapter, the compensation during the period of retraining for a new occupation, as certified by the division of vocational rehabilitation, department of education, shall be 66 2/3 percent of the daily wage, subject to the maximum compensation provided in this chapter, at the time of the injury, not beyond 52 weeks, provided the commission, after consultation with its bureau of workmen's rehabilitation, finds that the retraining is necessary and makes an order for such compensation."

The commission, in Vreeman v. The Kahler Corp. 23 Minn. W. C. D. 1 (1963), a case which was not appealed to this court,

interpreted the above statute as permitting concurrent payment of retraining and disability benefits. The commission in its opinion relied upon the phrase "In addition to" and upon its belief that retraining benefits were intended as an incentive to encourage retraining.

Thereafter, in 1967, the legislature revised and renumbered the retraining benefits section. Retraining benefits are now covered by Minn. St. 176.101, subd. 8, which reads as follows:

"For any injury producing permanent disability which will prevent the employee from adequately performing the duties of the occupation he held at the time of injury, or any other injury which will or is likely to produce indefinite and continuous disability in excess of 26 weeks, the commissioner of the department of labor and industry shall require that the injured employee be promptly referred to the division of vocational rehabilitation, department of education, or other public or private, properly accredited agency, to determine if retraining for a new occupation would significantly reduce or remove any reduction in employability caused by the injury. The employer shall pay any usual and reasonable expenses and charges for such evaluation. If the evaluating agency certifies to the commissioner of the department of labor and industry that a period of retraining will significantly reduce or prevent the decrease in employability resulting from the injury, and if the commissioner of the department of labor and industry, compensation judge, or commission, in cases upon appeal, determines the retraining is necessary and makes an order for such compensation, the employer shall pay up to 104 weeks of additional compensation during the actual period of retraining according to the schedule of compensation for temporary total disability. However, the total additional compensation provided by this subdivision shall not be greater than an amount equal to that payable for the injury as compensation for temporary and permanent disability."

It is this section which we must interpret.

Were it not for the last sentence, there would be no question about affirming on the concurrency issue. First, the statute uses the word "additional" in the sentence "the employer shall pay up to 104 weeks of additional compensation during the actual period of retraining." We do not think that this sentence is ambiguous in meaning; we think it means what it says. Second, even if the last two sentences taken together were considered to be ambiguous, we would still have no difficulty in affirming. This is because the legislature when it revised the retraining benefits section presumably was aware of the commission's interpretation. Had it wanted to, it could have easily made clear its intention to legislatively change the commission's interpretation. Its failure to do so should constitute an adoption of the commission's interpretation. See discussion at 82 C. J. S., Statutes, § 370 (b) (2).

However, the last sentence of the statute gives us some trouble. Employer contends that the purpose of this provision is to prevent concurrent payment of benefits. Employee contends that this is simply a limitation, additional to the 104 week limitation, on the total amount of retraining payments an employee can receive and not an expression of legislative intent forbidding concurrent payment of retraining and disability benefits. After careful deliberation we accept employee's interpretation because we believe that if the legislature had intended to forbid concurrent payments, it would have said so clearly and it did not.

Affirmed.