Richard RIPPENTROP, Respondent
(81–334), Relator (81–336),

v.

IMPERIAL CHEMICAL COMPANY, et
al., Respondents,

Commissioner, Department of Labor and
Industry, Relator (81–334),
Respondent (81–336).

Nos. 81–334, 81–336.

Supreme Court of Minnesota.

March 5, 1982.

Dale A. Gruis, Workers' Compensation Division, St. Paul, for Rippentrop.

Warren Spannaus, Atty. Gen., and Peter F. Nelson, Sp. Asst. Atty. Gen., St. Paul, for Commr., Dept. of Labor and Industry.

Gilmore, deLambert, Aafedt, Eustis & Forde and Donald W. Anderson, Minneapolis, for Imperial Chemical Co., et al.

PETERSON, Justice.

Employee Richard Rippentrop and the commissioner of labor and industry separately seek review of a decision of the Workers' Compensation Court of Appeals which construed Minn.Stat. § 176.102 (1980) as (1) not entitling a disabled employee seeking direct job placement in a new occupation to receive compensation at the rate of 125% of his temporary total disability benefits pursuant to section 176.102, subd. 11, and (2) as not authorizing the director of rehabilitation services and the rehabilitation review panel established by that statute to determine when disabled employees are entitled to the increased compensation provided in subd. 11. We affirm.

The provisions of section 176.102 may be summarized as follows: Subd. 1 provides that vocational rehabilitation shall train an employee for employment in a job related to his former employment or in another work area producing an economic status as close as possible to that he would have enjoyed without disability; subd. 2 provides for supervision of rehabilitation services by the commissioner and their administration by a director of rehabilitation services hired by the commissioner; subd. 3 creates a rehabilitation review panel, made up of the commissioner or his designee and members from labor, employers, insurers, vocational rehabilitation, medicine and chiropractic, whose functions shall include reviewing "appeals regarding rehabilitation plans" and holding revocation of certification approval hearings; subd. 4 requires an employer to provide "rehabilitation consultation" by an approved consultant for an employee unable because of injury or occupational disease to return to his former employment and, if the consultant "determines rehabilitation would significantly reduce or eliminate the decrease in employability," requires the consultant and the employer or insurer to submit "a specific plan of rehabilitation" to the commissioner; subd. 5 provides that on-the-job training be given consideration in developing a rehabilitation plan, specifies the compensation payable to an employee during such training, and imposes liability therefor in whole or in part on the insurer; subd. 6 requires the commissioner to approve or reject rehabilitation plans, provides for appeal to the rehabilitation panel from his decision, and empowers that panel to approve or reject the commissioner's decision and, if the latter, formulate its own rehabilitation plan; subd. 7 requires progress reports from rehabilitation services providers; subd. 8 provides for plan modification under specified circumstances; subd. 9 imposes liability on the employer for specified "rehabilitation expenses"; subd. 10 requires approval by the commissioner of rehabilitation consultants; subd. 11 specifies the circumstances under which an employee is to be paid 125% of the temporary total disability compensation to which he is entitled; and subd. 12 directs the commissioner to promulgate rules necessary to implement the section.

The facts in this case are not in dispute. Employee was forced to terminate his employment with the employer on November 1, 1979, after he sustained chemical poisoning. Because of his condition he was temporarily totally disabled and cannot return to his former work. On March 21, 1980, a so-called "rehabilitation plan" was approved by a rehabilitation services specialist; the plan called for the employee and a rehabilitation specialist furnished by the employer's insurer to work together to procure employee direct job placement in a different occupation. The plan was approved by a rehabilitation services specialist of the Department of Labor and Industry, but on July 10, 1980, the employer-insurer requested suspension or termination of the plan on the ground that employee had not been cooperative. Following an administrative conference, another rehabilitation specialist denied that request and incidentally ordered that employee receive a rehabilitation benefit of 125% of his compensation for temporary total disability pursuant to section 176.102, subd. 11, retroactive to March 21, 1980. The employer-insurer appealed this decision to the rehabilitation review panel which, in a decision and order dated October 24, 1980, determined that direct job placement is an integral part of vocational rehabilitation under section 176.102, that it had jurisdiction over the claim for rehabilitation benefits of 125%, and that employee was not entitled to such benefits while seeking direct job placement. On appeal by the employer and the commissioner, the Court of Appeals agreed that direct job placement is an alternative permitted by this statute and that employee was not entitled to the 125% benefit provided by subd. 11. The court also held that the issue was not one which the director of rehabilitation services and the rehabilitation review panel were authorized to determine.

Minn.Stat. § 176.102 (1980) was enacted in 1979, repealing the former law governing retraining of injured employees who suf-

fered disability preventing them from returning to their occupations, Minn.Stat. § 176.101, subd. 7 (1978), and also significantly expanding the concept of rehabilitation services. We agree with the Court of Appeals that the statute is not a model of clarity. It speaks of "vocational rehabilitation," "rehabilitation," "rehabilitation plan," "rehabilitation under a plan," and "rehabilitation program" without defining those terms and without clear indication of the purpose for which they were used. Subd. 11 refers to both "156 weeks of compensation during rehabilitation under a plan" and "156 weeks of retraining compensation."

The commissioner and employee urge that employee was undergoing "rehabilitation under a plan" and that subd. 11 makes provision for payment of the 125% rate to such employees, but ignore the subsequent language in subd. 11, which clarifies the scope of the phrase on which they rely by providing that weeks during which an insurer pays compensation during on-the-job training "shall be subtracted from the 156 weeks of *retraining compensation* which has been paid, if any, pursuant to this subdivision." (Emphasis added). Although the statute makes no reference expressly to an employee who seeks direct job placement, it is obvious that such employees are not receiving vocational retraining and thus could not qualify for the increased benefit provided in this subdivision.

The Court of Appeals also pointed out that nowhere in the statute is there an indication that the legislature intended to grant the increased benefit to such employees. The legislative history of section 176.102 (1980) suggests that this omission was intentional. The prior statute, Minn.Stat. § 176.101, subd. 7 (1978), had been construed to permit an employee enrolled in a formal vocational retraining course to receive concurrently temporary total disability compensation and retraining benefits. *Nelson v. National Biscuit Co.*, 300 Minn.

46, 217 N.W.2d 734 (1974). This "double dipping" was the subject of widespread criticism, and the Minnesota Workers' Compensation Study Commission created by the 1977 legislature recommended that a supplemental payment of 15% of an employee's weekly temporary total disability compensation would be a sufficient incentive to encourage retraining. Minnesota Workers' Compensation Study Commission, *A Report to the Minnesota Legislature and Governor* 16 (1979). The 25% incentive given by Minn.Stat. § 176.102, subd. 11 (1980), was in all probability a compromise between that recommendation and the position of some legislators that the former provision should not be modified. In any event, this history justifies the conclusion that if the legislature had intended the 125% benefit to be payable for direct job placement efforts, as well as for formal vocational retraining, it would have said so plainly. As the employer-insurer points out, the headnote for subd. 11 in the bill before the legislature was "COMPENSATION DURING RETRAINING," which is "intrinsic evidence of the legislative author's own understanding of its purpose and intent." *In re Contest of General Election*, 264 N.W.2d 401, 404 n.5 (Minn.1978).[1]

While we recognize that the wisdom of providing the 125% benefit only as an incentive to formal vocational retraining was for the legislature's determination, the provision seems reasonable in that an employee who does not succeed in direct job placement efforts may then be encouraged to obtain formal vocational training through the incentive of increased compensation provided in subd. 11. We conclude that the Court of Appeals properly construed section 176.102 in determining that the 125% benefit is payable only to employees while they are receiving formal vocational retraining.

With respect to the other issue, we discern no provision in section 176.102 expressly or implicitly conferring on the di-

---

1. "Compensation during rehabilitation," the headnote appearing in the statute, is not part of

the statute. See Minn.Stat. § 648.36 (1980).

rector of rehabilitation services and the rehabilitation review panel the power to determine the compensation to which an employee subject to this provision is entitled.

Affirmed.

KELLEY, J., took no part in the consideration or decision of this case.