Sharon J. SHERMAN, Respondent,

v.

WHIRLPOOL CORPORATION and
Aetna Casualty and Surety
Company, Relators,

Steve Keefe, Commissioner, Minnesota
Department of Labor and Industry,
Intervenor, Respondent.

No. C7–85–2220.

Supreme Court of Minnesota.

May 2, 1986.

Donald W. Anderson, Minneapolis, for relators.

Richard C. Monks, Minneapolis, for Sharon Sherman.

Hubert H. Humphrey, III, Atty. Gen., Harold W. Schultz, II, Sp. Asst. Atty. Gen., St. Paul, for respondent.

YETKA, Justice.

On November 4, 1983, employee-respondent Sharon J. Sherman submitted a request for rehabilitation benefits to the Department of Labor and Industry. A rehabilitation specialist found Sherman eligible for rehabilitation services by an order filed March 14, 1984. Employer-relator Whirlpool and insurer-relator Aetna appealed, and the rehabilitation review panel affirmed the specialist's order on March 11, 1985. Relators appealed to the WCCA, which affirmed the panel's decision. The relators petitioned this court for a writ of certiorari, which we issued on December 4, 1985. We affirm the WCCA.

On October 20, 1969, while employed as an assembler for Whirlpool Corporation, employee-respondent Sharon J. Sherman, then 25, fell from an unsupported platform and injured her back, neck and right knee. As an assembler, her duties included continuous standing, bending and lifting, which, due to her injuries, she could not resume. Relators paid temporary total disability benefits for 350 weeks, and Sherman has pending a claim for permanent total disability benefits. For the past 15 years, she has regularly received medical treatment for her back and knee and has worked part time. On November 4, 1983, Sherman filed a R–4 request for workers' compensation rehabilitation benefits with the Department of Labor and Industry, Rehabilitation Services Division.

The department held an administrative conference to determine the respondent's eligibility for rehabilitation services. The specialist found that Sherman was permanently precluded from resuming her pre-injury employment and assigned a qualified rehabilitation counselor to determine whether she would benefit from a complete rehabilitation program. The relators appealed the order to the rehabilitation review panel.

At the panel hearing, the relators argued that Sherman was not qualified to obtain rehabilitation services, that Minn.Stat. § 176.102, subd. 11(a) prohibited the retroactive application of the rehabilitation statute to Sherman, and that, if applied, the action would be unconstitutional. Testifying at the hearing were an insurance company executive concerning the expense of rehabilitation programs, a qualified rehabilitation specialist who concluded that Sherman would benefit from rehabilitation services, and Sherman, who described her physical condition and expressed her desire to receive rehabilitation and return to active employment. On March 11, 1985, the panel ruled that Sherman was eligible to receive rehabilitation services under Minn. Stat. § 176.102 (1984), assigned a qualified rehabilitation consultant, and ordered relators to cooperate in carrying out the rehabilitation plan. The panel found that it lacked jurisdiction to make determinations concerning the retroactivity or constitutionality of section 176.102. Relators appealed to the WCCA, and the Department of Labor and Industry intervened.

On November 5, 1985, the WCCA affirmed the rehabilitation review panel order. *Sherman v. Whirlpool,* No. 469–48–8878 slip op. (WCCA Nov. 5, 1985). The court found that Sherman was qualified to receive rehabilitation and that the statute providing for such services could be retroactively applied. It did not have jurisdiction to resolve the constitutional challenge. The WCCA also awarded employee attorney fees for its appeal and remanded to the commissioner for determination of the attorney fees for earlier legal services.

The relators petitioned this court for a writ of certiorari.

The issues raised are:

I. Whether the rehabilitation services ordered were a monetary benefit within the meaning of Minn.Stat. § 176.102, subd. 11(a) (1984) and, therefore, cannot be retroactively awarded to respondent.

II. Whether the retroactive application of Minn.Stat. § 176.102 is constitutional.

I. *Whether the Rehabilitation Services Ordered Were a Monetary Benefit Within the Meaning of Minn.Stat. § 176.102, Subd. 11(a) and, Therefore, Cannot Be Retroactively Awarded to Respondent*

Minn.Stat. § 176.102 (1984) was passed in 1979 and amended in 1983 in order to improve the comprehensive workers' compensation program by significantly expanding the scope and availability of rehabilitation services for injured employees. *Rippentrop v. Imperial Chemical Co.*, 316 N.W.2d 514, 515–16 (Minn. 1982); *see* Minnesota Workers' Compensation Study Commission, A Report to the Minnesota Legislature and Governor 26 (1979). Among its many changes, the 1979 amendments repealed the "double dip" allowed under the previous retraining statutes. Under the old law, an employee was eligible for compensation equal to twice the employee's regular rate for temporary total compensation, as well as other expenses.[1] Under the 1979 act, section 176.101, subdivision 7 was repealed and replaced with section 176.102. Act of June 7, 1979, ch. 3, §§ 36, 70, 1979 Minn.Laws, 1278–81, 1297. Subdivision 11 of section 176.102 set the maximum amount of total compensation an employee could receive while in a rehabilitation program to 125% of the employee's rate for temporary total disability.[2] *See Leahy v.*

---

**1.** Minn.Stat. § 176.101, subd. 7 (1978) provided in part:

> If the evaluating agency certifies to the commissioner of the department of labor and industry that a period of retraining will significantly reduce or prevent the decrease in employability resulting from the injury, and if the commissioner of the department of labor and industry, compensation judge, or workers' compensation court of appeals, in cases upon appeal, determines the retraining is necessary and makes an order for such compensation, *the employer shall pay up to 156 weeks of additional compensation during the actual period of retraining according to the schedule of compensation for temporary total disability* * * *.

(Emphasis added.) Under Minn.Stat. § 176.101, subd. 3(45) (1961), the concurrent payment of benefits was first approved in *Vreeman v. The Kahler Corp.*, 23 WCD 1 (1963), a case not appealed to this court. In 1967, the legislature revised the retraining benefits section, allowing for concurrent payments equal to 200% of regular temporary total disability payments. *See* Act of June 2, 1967, ch. 40, § 11 1967 Minn. Laws 2235–36 (codified at Minn.Stat. § 176.101, subd. 8 (1967)). *See Nelson v. National Biscuit Co.*, 300 Minn. 46, 217 N.W.2d 734 (1974); Walsh, *Employees' Claims for Concurrent Payment of Temporary Disability and Retraining Benefits*, 6 Wm. Mitchell L.Rev. 731 (1980).

**2.** Minn.Stat. § 176.102, subd. 11 (1980) provided:

> The insurer or employer shall pay up to 156 weeks of compensation during rehabilitation under a plan in an amount equal to 125 percent of the employee's rate for temporary total disability. This payment is in lieu of payment for temporary total, temporary partial, or permanent total disability to which the employee might otherwise be entitled for this period under this chapter, but shall be considered to be the equivalent of temporary total disability for the purposes of section 176.-132. * * * This subdivision shall not apply to retraining benefits for which liability has been established prior to July 1, 1979.

The original section 176.102, subdivision 11 explicitly limited its effect to injuries arising after its effective date. This was interpreted to limit retroactive application of subdivision 11 to retraining benefits for which liability had not been established prior to the new law. *See Leahy v. St. Mary's Hospital*, 339 N.W.2d 265 (Minn.1983); *Solberg v. FMC Corp.*, 325 N.W.2d 807 (Minn.1982). In 1983, the legislature amended subdivision 11 to provide as follows:

> Subd. 11. **Retraining.** Retraining is limited to 156 weeks. An employee who has been approved for retraining may petition the commissioner for additional compensation not to exceed 25 percent of the compensation otherwise payable. If the commissioner determines that this additional compensation is warranted due to unusual or unique circumstances of the employee's retraining plan, the commissioner may award additional compensation in an amount the commissioner deter-

*St. Mary's Hospital,* 339 N.W.2d 265 (Minn.1983); *Solberg v. FMC Corp.,* 325 N.W.2d 807 (Minn.1982); *Rippentrop,* 316 N.W.2d at 516; BenAnav, *Workers' Compensation Amendments of the 1979 Minnesota Legislature,* 6 Wm. Mitchell L.Rev. 743, 745–51 (1980).

Relators argue that, according to the plain language of the statute, the cost of a rehabilitation consultation is a "monetary benefit" within the meaning of section 176.-102, subdivision 11(a) and, therefore, cannot be awarded to Sherman since her injury occurred before the passage of section 176.102.

Sherman and the commissioner maintain that the rehabilitation services ordered for Sherman were not monetary benefits within the meaning of subdivision 11(a) and, therefore, the section can be retroactively applied.

▆▆▆▆ We find that rehabilitation services are not monetary benefits within the meaning of section 176.102, subdivision 11(a). There is a difference between benefits paid directly to the employee over which the employee has discretionary use, which we regard as "monetary benefits," and the expense to the employer of rehabilitation services which are not paid directly to the employee and over which the employee does not retain discretion. The "monetary benefits" referred to in subdivision 11(a) are the previous compensation rights of an employee receiving retraining under the old "double dipping" law. Subdivision 11(a) prohibits employers from using subdivision 11 to cut back the rate of concurrent temporary disability and retraining benefits for employees whose rights had vested prior to 1979. Furthermore, respondents are correct in arguing that if monetary benefits included rehabilitation services, the entire section would have no retroactive effect and subdivision 11(a) would be

a nullity. This court will interpret a statute in such a way as to give effect to all of its provisions. *Paul v. Faricy,* 228 Minn. 264, 275, 37 N.W.2d 427, 434 (1949); Minn. Stat. § 645.17(2) (1984). We find, therefore, that section 176.102, subdivision 11(a) does not bar the retroactive application of section 176.102 to Sherman.

II. *Whether the Retroactive Application of Minn.Stat. § 176.102 Is Constitutional*

Relator contends that, if rehabilitation services are not regarded as a monetary benefit under section 176.102, subdivision 11(a), the retroactive application of section 176.102 violates due process and impairs the obligation of contracts. Rehabilitation services, it is argued, impose additional liability on the employer and insurer which did not exist at the time of the accident and, therefore, unconstitutionally impair their vested right in determined liability.

Respondents maintain that the rehabilitation services do not impair a vested right of the employer. Furthermore, the employee's interest in rehabilitation outweighs the employer and insurer's interest in saving the cost of rehabilitation, especially since rehabilitation will ultimately reduce the employer-insurer's obligation.

This court has long ruled that a retroactive change in the vested obligation of an employer and insurer to pay monetary benefits is unconstitutional. In *Yaeger v. Delano Granite Works,* 250 Minn. 303, 308, 84 N.W.2d 363, 366 (1957), we stated: "Since a workmen's compensation act is contractual in nature, any statute which purports to alter a substantial term of the contract which was in effect at the time the controlling event occurred (the death of the employee in these cases) impairs the obligation of such contract and is therefore unconstitutional." *Yaeger* concerned additional death benefits to be paid to an em-

---

mines is appropriate, not to exceed the employee's request. This additional compensation shall cease at any time the commissioner determines the special circumstances are no longer present.

Subd. 11a. **Applicability of section.** This section is applicable to all employees injured prior to or on and after October 1, 1979, except for those provisions which affect an employee's monetary benefits.

*See* Act of June 7, 1983, ch. 290, §§ 81–82, 1983 Minn.Laws 1354–55.

ployee's survivors for injuries that occurred before the statute authorizing the additional benefits became effective. The court found that the additional death benefits affected a substantive right or vested right, which we defined as follows:

> When a right has arisen upon a contract, or transaction in the nature of a contract, authorized by statute and liabilities under that right have been so far determined that nothing remains to be done by the party asserting it, it becomes vested and the repeal of the statute does not affect it or the action for its enforcement. 11 Am.Jur., Constitutional Law, § 370. The repeal of the 1949 law did not operate to impair rights that had vested while the statute was in force. It is recognized that vested rights include not only legal or equitable title to enforcement of a demand but include as well an exemption from new obligations created after the right vested.

*Id.* at 307, 84 N.W.2d at 366; *see Miller v. Norris Creameries*, 306 Minn. 79, 85, 235 N.W.2d 203, 206 (1975); *Boltz v. Armour Agricultural Chemical Co.*, 269 Minn. 482, 486, 131 N.W.2d 624, 627–28 (1964). There is some force to the argument that the insurance premiums paid by the employer were based on the law as it existed at the time of the injury, and, therefore, the expectations of the parties as they entered into the contractual relationship are affected by the different rehabilitation services now required to be provided to the employee under section 176.102. *See Solberg*, 325 N.W.2d at 809–10 (Scott, J., dissenting).

We decline, however, to adopt such an analysis in this case. First, it is not clear that the statute will result in a greater overall cost to the employer, for if the employee can be rehabilitated, the temporary partial disability might be reduced or eliminated. Second, the legislature has expressed a clear intent to have section 176.102 applied retroactively to all rehabilitation benefits not established before 1983, the enactment date of subdivision 11(a). The clear intent of the legislature is also a factor to be taken into consideration when evaluating the retroactive application of a workers' compensation statute. As we have stated, "[t]he workers' compensation law in effect on the date of injury governs, *absent a clear manifestation of contrary legislative intent." Leahy*, 339 N.W.2d at 267 (emphasis added). Furthermore, since the retraining statute in effect at the time of Sherman's injury required the certification of the division of vocational rehabilitation or other properly accredited agency, and the record shows no such certification, the relators' rehabilitation obligations had not yet vested under the *Yaeger* definition before the adoption of section 176.102. *See* Minn.Stat. § 176.101, subd. 8 (1969). Thus, no constitutional concerns arise. The right to rehabilitation benefits does not vest from the moment of injury, but upon the determination that retraining is necessary.[3]

Attorney fees of $400 and costs are awarded for the present appeal and the case is remanded to the commissioner for determination of attorney fees in connection with earlier legal services rendered.

---

**3.** In *Solberg*, 325 N.W.2d at 808–09, the court ruled that Minn.Stat. § 176.102, subd. 11 (1980), governing compensation payable to an employee during retraining, applies to all retraining benefits for which an employer's liability had not been established prior to October 1, 1979, the effective date of the original section 11:

> It is clear from the quoted language in Minn. Stat. § 176.102, subd. 11 (1980) that the legislature has determined such concurrent benefits will be permitted only if the employer's liability for retraining benefits had been established prior to October 1, 1979, and we see no reason why the legislature could not so provide *since an employee does not acquire a vested right to retraining by virtue of sustain-*

*ing a compensable injury; instead, an employer's obligation to furnish retraining benefits must be preceded under Minn.Stat. § 176.101, subd. 7 (1978) by an order of the commissioner of labor and industry, a compensation judge, or the Court of Appeals in cases upon appeal.* Thus, relators' liability for retraining benefits not having been established prior to October 1, 1979, Minn.Stat. § 176.102, subd. 11 (1980) requires that employee be awarded weekly retraining benefits during his certified course equal to 125 percent of his rate for temporary total disability. The award of concurrent benefits is therefore reversed.

*Id.* (emphasis added).

The Workers' Compensation Court of Appeals is affirmed.