**Cathy J. VAIT, Relator,**

v.

**MERILLAT INDUSTRIES, Self–Insured, Respondent.**

No. C2–88–1376.

Supreme Court of Minnesota.

Nov. 18, 1988.

John G. Brian, III, St. Paul, for relator.

William R. Pederson, Minneapolis, for respondent.

WAHL, Justice.

This is an appeal from a decision of the Workers' Compensation Court of Appeals affirming a compensation judge's determination that Minn.Stat. § 176.102, subd. 9 (1986) does not require the self-insured employer to pay for reasonable costs of travel and custodial daycare while the employee participated in an on-the-job training program. We reverse.

The parties in this case have submitted the following stipulated facts:

"Cathy Vait sustained an injury to her right elbow on July 11, 1985, in the course and scope of her employment as an assembler for the self-insured employer Merillat. On the date of this injury, Ms. Vait's average weekly wage was $348.40 per week. The self-insured employer provided Ms. Vait with certain rehabilitation services following her injury. These included outside job placement assistance after the employee could

not return to a modified job at Merillat. The self-insured employer paid day-care and mileage expenses during the employee's outside job placement search.

The employee, Merillat and Dexterity Dental Labs of Rosemount, Minnesota signed an on-the-job training ("OJT") plan and agreement * * *. This plan became effective September 12, 1986. Pursuant to the OJT plan, Ms. Vait trained as a dental laboratory technician. Under the terms of the OJT plan, Ms. Vait received six months of training, with the plan concluding in March, 1987. For the first three months of training, Ms. Vait received no wages from Dexterity Dental Labs. For the last three months of the OJT plan, Ms. Vait received minimum wage from Dexterity Dental Lab. No workers' compensation wage loss benefits are in dispute in this proceeding.

During the OJT plan, Ms. Vait worked 119 days. The round trip mileage from her home to Dexterity Dental Labs in Rosemount was 15 miles, for a total of 1,785 miles during the OJT plan. Ms. Vait incurred day-care expenses of $12 per day day during the OJT plan, for a total of $1,428 in day-care expenses during the OJT plan."

The employee also received temporary total compensation for the first 3 months of the training period; and she received temporary partial compensation for the last 3 months of training.

A dispute arose as to whether the self-insured employer was statutorily liable for the employee's cost of travel and custodial daycare in the on-the-job training program. An administrative conference was held before a rehabilitation specialist of the Department of Labor and Industry who concluded that the employee was entitled to reimbursement for her mileage and daycare expenses pursuant to Minn.Stat. § 176.102, subd. 9(c). The self-insured employer requested a hearing *de novo* before a compensation judge from the Office of Administrative Hearings. The compensation judge determined that, statutorily, the self-insured employer was not liable for these expenses. On the employee's appeal, the Workers' Compensation Court of Appeals affirmed. By writ of certiorari, the employee has sought review by this court.

It is the employee's position that she is entitled to reimbursement of her custodial daycare and mileage expenses during the period of her on-the-job training program pursuant to Minn.Stat. § 176.102, subd. 9 (1986) which reads as follows:

[Rehabilitation] Plan, costs. An employer is liable for the following rehabilitation expenses under this section:

(a) Cost of rehabilitation evaluation and preparation of a plan;

(b) Cost of all rehabilitation services and supplies necessary for implementation of the plan;

(c) Reasonable cost of tuition, books, travel, and custodial daycare; and, in addition, reasonable costs of board and lodging when rehabilitation requires residence away from the employee's customary residence;

(d) Reasonable costs of travel and custodial daycare during the job interview process;

(e) Reasonable cost for moving expenses of the employee and family if a job is found in a geographic area beyond reasonable commuting distance after a diligent search within the present community. Relocation shall not be paid more than once during any rehabilitation program, and relocation shall not be required if the new job is located within the same standard metropolitan statistical area as the employee's job at the time of injury. An employee shall not be required to relocate and a refusal to relocate shall not result in a suspension or termination of compensation under this chapter; and

(f) Any other expense agreed to be paid.

The self-insured employer counters that, because clause (d) provides for payment of travel and custodial daycare expenses during the job interview process, application of clause (c) must be limited so that clause (d) will not be superfluous, void or insignificant. *Gale v. Commissioner of Taxation,*

228 Minn. 345, 349, 37 N.W.2d 711, 715 (1949).

We do not believe, however, that application of clause (c) to both retraining at an educational facility and on-the-job training will render clause (d) "superfluous, void or insignificant." Clause (d) merely guarantees that employers will continue to be liable for these expenses when the training program comes to an end and the employee is involved in the "job interview process." We also think that the statute on its face authorizes these expenses absent anything in the statute or its legislative history to the contrary, particularly where, statutorily, the employers are not liable for the functional equivalent of a pre-injury wage during the on-the-job training program.

Before October 1, 1979, there was no mandatory system of rehabilitation for injured employees; and, for the most part, rehabilitation was synonymous with retraining. Generally, retraining was defined as a specifically approved course of formal study that prepared an injured employee for a new occupation. The retraining provision did not expressly provide for reimbursement of tuition, books and transportation expenses in addition to stated weekly retraining benefits amounts; however, this court construed the provision as authorizing such reimbursement if the division of vocational rehabilitation and commissioner of labor and industry determined that such expenses were reasonably necessary. *Graves v. Glen Lake State Sanitorium,* 277 N.W.2d 196 (Minn.1979); Minn. Stat. § 176.101, subd. 7 (1978).

In 1979, rehabilitation was statutorily mandated for those employees who met certain requirements. 1979 Minn.Laws Ex. Sess. ch. 3, § 36. Formal retraining was one of many possibilities for a particular rehabilitation plan which could include direct job placement or on-the-job training. *See, e.g., Rippentrop v. Imperial Chemical Co.,* 316 N.W.2d 514 (Minn.1982). In addition, employers were statutorily mandated to reimburse employees for tuition, books and transportation. 1979 Minn.Laws Ex.Sess. ch. 3, § 36; codified at section 176.102, subdivision 9 (1979).

When the plan involved on-the-job training, the 1979 statute provided that the employee was to receive compensation while so employed in an amount equal to his after-tax wage at the time of injury. 1979 Minn.Laws Ex.Sess. ch. 3, § 36; codified at section 176.102, subdivision 5 (1979). In 1983, subdivision 5 of section 176.102 was amended to eliminate all references to the method of payment for on-the-job training programs. 1983 Minn.Laws ch. 290, § 74. As amended, that statute merely provided (and currently provides) that on-the-job training was to be considered in developing a rehabilitation plan. Minn.Stat. § 176.102, subd. 5 (1986). In our view, the 1983 amendment obliterated any distinction between on-the-job training and "formal" [re]training at an educational facility.

Also in 1983 and 1984, custodial daycare and transportation expenses were added as costs payable by the employer under subdivision 9. Specifically, daycare costs were added to clause (c) which previously required reimbursement for tuition, books and travel; and clause (d) was added to provide that daycare and transportation were reimbursable during the job interview process. 1983 Minn.Laws ch. 290, § 79; 1984 Minn.Laws ch. 432, art. 2, § 14. As the employee maintains, there is nothing in subdivision 9 that limits liability for daycare and travel expenses to "formal" retraining at an educational facility and excludes liability for such expenses when the employee is similarly situated financially while participating in an "informal" on-the-job training program. The legislature did, elsewhere, define "retraining" as a "formal course of study in a school setting which is designed to train an employee to return to suitable gainful employment." Minn.Stat. § 176.011, subd. 23 (1986). Presumably, if the legislature had intended to limit clause (c) in subdivision 9 of section 176.102, it would have expressly done so. *See Gasper v. Northern Star Company,* 422 N.W.2d 727, 730 (Minn.1988).

As we have said before, "[i]f we misperceive the intent of the legislature, our misperception is subject to legislative re-examination. We must take the statute as we

find it and give it a construction consistent with its purpose of encouraging injured workers to increase their employability through retraining." *Graves, supra* at 197, *citing Morrison v. Merrick's Super Market, Inc.,* 300 Minn. 535, 536, 220 N.W.2d 344, 345 (1974). The payment of reasonable daycare and travel expenses to those who receive less than the pre-injury wage during on-the-job training provides a necessary incentive to these injured workers to involve themselves in such retraining. We therefore hold that injured workers who are participating in an on-the-job training program are entitled to reasonable reimbursement for travel and custodial daycare under Minn.Stat. § 176.102, subd. 9(c) (1986). We therefore reverse the decision of the Workers' Compensation Court of Appeals to the contrary.

REVERSED.

Employee is awarded $400 in attorney fees on appeal.