**Richard G. LANGA, Respondent,**

v.

**FLEISCHMANN–KURTH MALTING CO. and Old Republic Insurance Co., Relators.**

**No. C4–91–403.**

Supreme Court of Minnesota.

Feb. 14, 1992.

Eugene J. Flick, St. Paul, for relators.

Friedrich A. Reeker, Minneapolis, for respondent.

COYNE, Justice.

Employer Fleischmann–Kurth Malting Company and its insurer Old Republic Insurance Company seek review of a decision of the Workers' Compensation Court of Appeals affirming an award of custodial day care benefits to employee Richard Langa. At issue is whether Langa is entitled to custodial day care benefits pursuant to Minn.Stat. § 176.102, subd. 9(c) (1990). We reverse.

The facts of this case are not in dispute. On August 16, 1988 Langa sustained a severe compensable injury to his right

knee. Despite four intervening surgical procedures intended to restore use of his knee, neither Langa's treating physician nor the employer's examining physician was of the opinion that Langa was ready to resume employment as of the time of the compensation hearing or that he had then reached maximum medical improvement. Although Langa does prescribed special exercises daily, his knee has shown little sign of improvement. Langa's day consists of dressing his three children—who were 4½ years, 3 years, and 10 months old at the time of the compensation hearing—showering, eating breakfast, exercising, folding laundry when necessary, and reading. Following his doctor's advice to stay off his feet as much as possible and to lift from a sitting position, Langa remains at home and rests his knee in the hope that it will improve so that he can resume his preinjury lifestyle.

After Langa had lost 60 days of work time because of his knee injury, he selected a qualified rehabilitation consultant. The Q.R.C. gave him an interest test, which he took at home. Once or twice a month Langa and the Q.R.C. have spoken over the telephone about his physical condition, but his interaction with the Q.R.C. has never taken him out of his house.

Because Langa has not received medical approval for the resumption of any work activity, Langa's Q.R.C. has never formulated a rehabilitation plan for him. Nevertheless, Langa initiated this proceeding by filing a medical request claiming entitlement to custodial day care benefits pursuant to Minn.Stat. § 176.102, subd. 9(c) (1990). Prior to his injury, Langa and his wife had arranged their work schedules to accommodate child-rearing obligations. Langa had taken care of their three small children during the morning and early afternoon hours and worked from 3:30 p.m. to 11:30 p.m. Mrs. Langa had worked from 6:30 a.m. to 2:30 p.m. and taken care of the children during the late afternoon and evening. Until Langa's injury, then, the Langas did not require the services of a day care provider; but although Langa dresses the children in the morning, since Langa's injury the children have been placed in day care. The parties have stipulated that Langa's work-related injury has rendered him unable to tend adequately to his children's needs and that the expense incurred for custodial day care is reasonable. A rehabilitation and medical specialist ruled that Langa was not entitled to recover custodial day care costs. Minn. Stat. § 176.106 (1990). Langa then requested a formal hearing; the compensation judge awarded custodial day care benefits pursuant to Minn.Stat. § 176.102, subd. 9(c) (1990), on the ground that medical treatment and convalescence constituted "physical * * * rehabilitation" within the meaning of Minn.Stat. § 176.102, subd. 1; and the WCCA affirmed.

As we have previously noted in respect of the predecessor of Minn.Stat. § 176.102 (1990), the statute itself is hardly a model of clarity:

> It speaks of 'vocational rehabilitation,' 'rehabilitation,' 'rehabilitation under a plan,' and 'rehabilitation program' without defining those terms and without clear indication of the purpose for which they were used.

*Rippentrop v. Imperial Chemical Co.*, 316 N.W.2d 514, 516 (Minn.1982). In 1983 the ambiguity was deepened by the insertion in subdivision 1 of the word "physical" so that section 176.102, subdivision 1 now refers to "physical and vocational rehabilitation."[1] Nevertheless, we have consistently

---

1. Minn.Stat. § 176.102, subd. 1 (1990) reads in relevant part as follows:

**176.102. REHABILITATION.**

**Subdivision 1. Scope.** Rehabilitation is intended to restore the injured employee, through physical and vocational rehabilitation, so the employee may return to a job related to the employee's former employment or to a job in another work area which produces an economic status as close as possible to that the employee would have enjoyed without disability. Rehabilitation to a job with a higher economic status than would have occurred without disability is permitted if it can be demonstrated that this rehabilitation is necessary to increase the likelihood of reemployment. Economic status is to be measured not only by opportunity for immediate income but also by opportunity for future income.

concluded that rehabilitation fundamentally means assistance in preparing for or obtaining employment. *Vait v. Merrillat Industries,* 431 N.W.2d 536, 538 (Minn.1988); *Hanmer v. Wes Barrette Masonry,* 403 N.W.2d 839, 840 (Minn.1987); *Graves v. Glen Lake State Sanitorium,* 277 N.W.2d 196, 197 (Minn.1979); *Norby v. Arctic Enterprises, Inc.,* 305 Minn. 519, 521, 232 N.W.2d 773, 775 (1975). The purpose of rehabilitation is to arm injured workers who are disabled from returning to their preinjury jobs with the skills required to return them to jobs related to their former employment or to jobs that produce an economic status as close as possible to that which the employee would have enjoyed without disability and also to encourage injured workers to increase their employability by acquiring such skills through training or retraining. *E.g., Graves,* 277 N.W.2d at 197. We have also said that, as used in the context of workers' compensation, "rehabilitation" encompasses retraining, on-the-job training, and direct job placement. *Vait,* 431 N.W.2d at 538.

At the time of the compensation hearing the employee's injury was still under medical management; his physician was supervising and monitoring his convalescence. Traditionally, the primary purpose of medical care and treatment is to return the employee, as nearly as possible, to his or her preinjury state of wellness. That medical care and treatment may return the employee to his or her preinjury employment is surely a desirable outcome, but it is secondary to the primary purpose. Here both treating and examining physicians were of the opinion as of the time of the compensation hearing that the employee

was not ready to resume employment and that he had not reached maximum medical improvement. As is usually the case, the employee's Q.R.C. deferred formulation of any rehabilitation plan until the employee's level of medical stabilization became known, contenting herself in the meantime with occasional telephone inquiries regarding the employee's condition. The absence of a rehabilitation plan—i.e., "a written document completed by a qualified rehabilitation consultant and which describes the manner and means by which it is proposed that a qualified employee[2] may be returned to suitable, gainful employment through the use of rehabilitation service"—is significant. Minn.R. 5220.0100, subp. 9 (1991). A rehabilitation plan is not prepared in every case in which an employee has sustained a compensable injury but only in those cases in which the Q.R.C. determines that rehabilitation would significantly reduce or eliminate the decrease in employability. Minn.R. 5220.0400, subp. 1 (1991). Of course, the determination that rehabilitation would significantly reduce or eliminate any decrease in employability and any decision about the kind of rehabilitation services which would be useful in achieving that end cannot be made until the employee's condition stabilizes sufficiently that the nature and extent of permanent disability and its effect on the employee's employability are known. Once the Q.R.C. decides that a rehabilitation plan would be useful, the rehabilitation plan must not only be in writing, it must be agreed upon by the Q.R.C., the employee, and the employer and submitted to the commissioner of the department of labor and industry before implementation and be approved by

It is instructive, although hardly dispositive, to note that in 1991 a consolidated effort was made to rid subdivision 1 of the word "physical." The authors of three independent bills that comprehensively amended the Workers' Compensation Act struck "physical" from subdivision 1. *See* S.F. No. 596, 77th Leg. (1991); S.F. No. 1073, 77th Leg. (1991); and S.F. No. 1248, 77th Leg. (1991). S.F. No. 1248 was adopted by the legislature but vetoed by the governor.

2. Minn. Rule 5220.0100, subp. 4 reads:
    Subp. 4. **Qualified employee.** "Qualified employee" means an employee who, because

of the effects of a work-related injury or disease, whether or not combined with the effects of a prior injury or disability:

A. is permanently precluded or is likely to be precluded from engaging in the usual and customary occupation or position in which the individual was engaged at the time of injury; and

B. can reasonably be expected to benefit from rehabilitation services which could significantly reduce or eliminate the decrease in employability.

the commissioner. Minn.R. 5220.0400 (1991). An employer is responsible for rehabilitation expenses pursuant to Minn. Stat. § 176.102, subd. 9 (1990), only in those cases in which a rehabilitation plan is in existence, and in those cases the employer's liability is limited to those rehabilitation services, such as custodial day care, set out in the plan or necessary for its implementation. In contrast, an employer is liable in every case for medical services necessitated by a compensable injury, but the workers' compensation act makes no provision for the cost of custodial day care incurred while the employee is under medical care. *See* Minn.Stat. § 176.135 (1990). Therefore, although physical therapy directed particularly to enhancing the employee's employability—specifically, to returning the employee "to a job related to the employee's former employment or to a job in another work area which produces an economic status as close as possible to that the employee would have enjoyed without disability," Minn.Stat. § 176.102, subd. 1 (1990)—and incorporated into a plan of rehabilitation may fall within the purview of section 176.102, subdivision 9, convalescence alone does not.

In the present case the employer is paying for the medical services provided the employee pursuant to Minn.Stat. § 176.135 (1990), which contains no provision for the payment of the cost of custodial day care. Until the employee has healed sufficiently that intelligent decisions can be made with respect to the necessity for and the nature and content of any rehabilitation plan, there is no basis for imposing liability on the employer pursuant to section 176.102, subdivision 9, for the reasonable cost of custodial day care or any other of the rehabilitation costs enumerated there. Unquestionably, the employee has sustained damages by reason of his inability to perform his preinjury child care duties. Workers' compensation, however, is a statutory scheme estranged from common law liability and damages, and it affords benefits only pursuant to specific statutory provisions. *Johnson v. Paul's Auto & Truck Sales,* 409 N.W.2d 506, 509 (Minn.1987). Because the act does not provide for the payment of the cost of custodial day care except for that incurred by reason of the implementation of rehabilitation, whether the provision of custodial day care is specified in the plan or only implicit in its terms, the cost of custodial day care during an employee's convalescence prior to the initiation of a plan of rehabilitation is not reimbursable.

Reversed.

YETKA, Justice (dissenting).

I respectfully dissent. In my opinion, the majority patently disregards the plain language of the Workers' Compensation Act, language which defines the concept of rehabilitation and the expenses for which an injured employee may be compensated on the road to recovery to resume past employment or retrain for new work. Today's opinion throws an obstacle in that road for this and other similarly situated injured employees who must get well before they can get back to work. This is not the intent of the Workers' Compensation Act.

The record reveals that the employee was forced to use a knee immobilizer and crutches after his injury. Following each of his four surgeries, the employee took part in physical therapy. At present, the employee is going through physical rehabilitation at the direction of his doctors. Both the treating physician and the independent medical examiner agreed that if some improvement does not occur through the present course of physical rehabilitation, additional surgery may be necessary. None of these facts is disputed, and the parties agree that the employee is unable to work at this time. The question, therefore, is whether the Act affords the reimbursement of the day-care expenses the employee has incurred.

The majority holds that the workers' compensation system was never intended to allow specific day-care benefits for workers in the process of physical rehabilitation. However, this conclusion disregards the language of the statute and defies common sense.

First, the majority claims that employees must be engaged in vocational rehabilitation to recover day-care costs because this has been the history of the Act. However, this ignores the fact that the Act expressly states that the restoration of an injured employee is intended through "*physical* and vocational rehabilitation." Minn.Stat. § 176.102, subd. 1 (1990) (emphasis added). In other words, the majority claims that the legislature, in modifying "rehabilitation" with the word "physical", could not have meant what it said.

It is true that this court has defined "rehabilitation" as "assistance in preparing for or obtaining employment" and that it "encompasses retraining, on-the-job training, and direct job placement." Majority Op. at 36–37. These definitions certainly apply to *vocational* rehabilitation. It seems to me, however, that rehabilitation is both physical and vocational. The former is a prerequisite to the latter. Retraining only becomes necessary when an employee cannot return to his or her pre-injury job. Moreover, retraining is only one method of restoring an injured employee to "an economic status as close as possible to that the employee would have enjoyed without disability" after physical rehabilitation has brought the employee to maximum medical improvement. Minn.Stat. § 176.102, subd. 1 (1990); *see also Vait v. Merillat Indus.*, 431 N.W.2d 536, 538 (Minn.1988) (formal retraining "one of many possibilities" for rehabilitation). Indeed, had the employee in this case reached a point where his physical rehabilitation allowed him to go back to work on a limited basis or to begin a vocational retraining program, he would be entitled to custodial day-care benefits under Minn.Stat. § 176.102, subd. 9(c). Even the majority concedes the availability of benefits in this situation. *See* Majority Op. at 38.

It is my position that the majority puts the cart ahead of the horse by allowing day-care costs to be paid when the employee is in retraining or engaged in a "rehabilitation plan," but not when that employee is under physical rehabilitation. This rule penalizes employees who are more seriously injured than others. It is a broad, general objective of the statute to rehabilitate physically an injured worker so that the employee may return to his or her original job. *See* Minn.Stat. § 176.102, subd. 1 ("Rehabilitation is intended to restore the injured employee * * * so the employee may return to a job related to the employee's former employment."). The majority's holding will allow a less seriously injured employee who is able to take part in a vocational rehabilitation plan to receive custodial day-care benefits while denying them to the employee who is not yet well enough to consider retraining or rehabilitation.

In addition, the employee here is already engaged in a rehabilitation plan, albeit not in the formal sense of retraining at an educational facility. However, we rejected such a formalistic approach in *Vait*, 431 N.W.2d at 538. There, we said that

> there is nothing in [Minn.Stat. § 176.-102,] subdivision 9 that limits liability for daycare and travel expenses to "formal" retraining at an educational facility and excludes liability for such expenses when the employee is similarly situated financially while participating in an "informal" on-the-job training program.

*Id.*

Moreover, even the employer/insurer's attorney, before the compensation judge at the April 11, 1990 hearing, conceded that a formal plan is not always necessary for an employee to receive benefits under subdivision 9. In my view, the employee's physical rehabilitation in this case is precisely the type of informal program which is aimed at increasing his employability or earning capacity; accordingly, the custodial day-care costs incidental to that rehabilitation should be reimbursed.

The majority's formalistic approach contravenes other language of the Act as well. Rehabilitation services, through which rehabilitation plans are realized, are services

> required to determine an employee's eligibility as a qualified employee, and service designed to return an individual to suitable, gainful employment by returning the individual to a job with the

former employer or to a job related to the individual's former employment. * * * *The service may include, but is not limited to, medical evaluation, medically prescribed physical rehabilitation,* work evaluation, counseling, job analysis, job modification, job placement, on-the-job training, or retraining.

Minn.R. 5220.0100, subp. 10 (1991) (emphasis added). Here, the employee is employing rehabilitation services in the form of medical evaluation and medically prescribed physical rehabilitation as a means of returning to his pre-injury work status. In my view, the day-care costs necessitated by this rehabilitation are those to which an injured employee is entitled under subdivision 9. In addition, as the employee maintains, the commissioner and the compensation judge have the discretion to "make determinations regarding rehabilitation issues *not necessarily part of a plan* including * * * determinations regarding whether an employee is eligible for * * * the benefits under subdivisions 9 and 11 to which an employee is entitled." Minn.Stat. § 176.102, subd. 6 (1990) (emphasis added). Both the compensation judge and the Workers' Compensation Court of Appeals agreed that the employee was entitled to the day-care benefits under subdivision 9. I would affirm this determination because there is substantial evidence in the record supporting the award.

When an employee is seriously injured, as was the employee in this case, the first step is physical rehabilitation. There is little point in considering retraining if the employee cannot go back to work because retraining becomes a possibility only after some form of physical rehabilitation has taken place. Then it makes sense to develop a plan for vocational retraining or rehabilitation. On the other hand, physical therapy and rehabilitation may not be successful and the employee may remain disabled; at that point, however, the employee's maximum medical improvement and permanent partial or permanent total disability will determine the type and duration of benefits available.

Finally, the majority states that workers' compensation "is a statutory scheme es-

tranged from the common law of liability and damages, and it affords benefits only pursuant to specific statutory provision." Majority Op. at 38 (*citing Johnson v. Paul's Auto & Truck Sales,* 409 N.W.2d 506, 509 (Minn.1987)). In my view, there is ample support in the language of the statute for the reimbursement of custodial day-care costs in this case. Rehabilitation may be physical or vocational. Although the majority wishes to characterize the term as "ambiguous," the legislature cannot be held to have restricted the concept of rehabilitation when it added the word "physical" to Minn.Stat. § 176.102, subd. 1. On the contrary, the legislature has been "significantly expanding" the concept for many years. *See Rippentrop v. Imperial Chemical Co.,* 316 N.W.2d 514, 516 (Minn.1982) (discussing 1979 amendments).

Accordingly, I would affirm the decisions of the compensation judge and the Workers' Compensation Court of Appeals and hold that custodial day-care costs are reimbursable for an injured employee undergoing physical rehabilitation.

WAHL, Justice (dissenting).

I join the dissent of Justice Yetka.

TOMLJANOVICH, Justice (dissenting).

I concur in the dissent of Justice Yetka.