Nancy E. MONTEITH, Relator,

v.

DOBBS PRO STAFF and CNA Insurance
Company, Respondents.

No. C3–95–1566.

Supreme Court of Minnesota.

Oct. 20, 1995.

Roger A. Johnson, Golden Valley Law Offices, Minneapolis, for relator.

David J. Klaiman, Gilmore, Aafedt, Forde, Anderson & Gray, P.A., Minneapolis, for respondent.

OPINION

PAGE, Justice.

The Workers' Compensation Court of Appeals reversed an award of medical benefits. We reverse and reinstate the compensation judge's decision.

Nancy E. Monteith sustained a compensable low back injury on December 5, 1991, while employed by Dobbs Pro Staff. An MRI done several months later showed that she suffered annular tears at L3–4 and L4–5, with abnormal disc hydration at all levels and degenerative changes at L5–S1. In January 1993, the employee participated in a Functional Capacities Evaluation, the results of which were used by her treating physician in recommending substantial back-related work restrictions. The physician also recommended that the employee participate in an in-patient chronic pain program at the Sister Kenny Institute. Rather than pursue in-patient treatment, after consulting her physician, the employee started on a "rigorous" home-based exercise program.

In April 1993, Dobbs Pro Staff/CNA Insurance Company and the employee, both represented by legal counsel, executed a stipulation for settlement for a full, final, and complete settlement of all of the employee's workers' compensation claims, including rehabilitation services claims, related to her December 1991 injury except those for "reasonable and related costs of non-chiropractic medical treatment."

In May 1993, the employee received an offer of employment as a flight attendant with Mesaba Airlines, but the offer was tem-

porarily withdrawn because of the employee's work restrictions. Believing that her physical condition had improved as a result of her home exercise program, the employee sought from her treating physician authorization to work without restrictions, but he declined to revise his prior opinion without a new functional capacities evaluation.[1] The second functional capacities evaluation, conducted at Park Nicollet Medical Center in June 1993, resulted in a revision of work restrictions and the employee obtained the employment offer that had previously been withdrawn.

The employee sought payment of the $642 in charges for the June 1993 Functional Capacities Evaluation as a medical expense. The employer/insurer refused to pay the bill, contending that (a) the evaluation was duplicative of the January 1993 evaluation, and (b) it was a rehabilitation expense that had been closed out by the April 1993 settlement agreement. The compensation judge ordered payment for the evaluation as a reasonably required medical expense, but the WCCA reversed on appeal.

 The medical benefits provision, Minn.Stat. § 176.135, subd. 1, contemplates the payment of reasonably required medical services rendered in connection with the treatment, supervision or management of a compensable injury. *See Langa v. Fleischmann–Kurth Malting Co.,* 481 N.W.2d 35, 37 (Minn.1992); *Schmidt v. Modern Metals Foundry, Inc.,* 469 N.W.2d 320 (Minn.1991); *Hopp v. Grist Mill,* 499 N.W.2d 812, 814 n.3 (Minn.1993); *Stephen v. Miles Constr. Co.,* 240 Minn. 307, 60 N.W.2d 801 (1953); *Castle v. City of Stillwater,* 235 Minn. 502, 51 N.W.2d 370 (1952). While the "primary purpose of medical care and treatment is to return the employee, as nearly as possible, to his or her preinjury state of wellness," a "secondary" aim of medical care and treatment is a return to work. *Langa,* 481 N.W.2d at 37. Here, it seems to us that

where the employee's treating physician would not revise his medical opinion as to the employee's ability to work without a new Functional Capacities Evaluation (which was then done at a medical clinic), the evaluation was necessary as a component of the physician's supervision or management of the employee's compensable low back injury. We therefore reverse and reinstate the decision of the compensation judge.

The employee is awarded $400 in attorney fees.

---

1. As the doctor put it, "[w]ithin ethical and moral guidelines, not to speak of the legalities involved, I am unable to reverse that opinion [of January 1993 regarding work restrictions]"; and in a subsequent letter to the employee, the doctor explained, "there must be some evidence present to demonstrate that, indeed, you can meet the job requirements of 30 pounds lifting frequently and 70 pounds occasionally. If you can demonstrate this at a Functional Capacity Assessment, then I would be most happy to verify your ability to be employed." The doctor also added that a functional capacity evaluation had "been arranged for."