819 So.2d 63 (2001)
TALLASSEE SUPER FOODS
v.
Jean HEPBURN.
2000527.
Court of Civil Appeals of Alabama.
November 30, 2001.
*64 Matthew C. McDonald and David F. Walker of Miller, Hamilton, Snider & Odom, L.L.C., Mobile, for appellant.
William K. Abell of Shinbaum, Abell, McLeod & Vann, Montgomery, for appellee.
CRAWLEY, Judge.
This is the second time this workers' compensation case has come before this court on appeal. On the prior appeal, Tallassee Super Foods v. Hepburn, 771 So.2d 477 (Ala.Civ.App.2000) (hereinafter "Hepburn I"), Jean Hepburn had sued her employer, Tallassee Super Foods, for workers' compensation benefits for pain in *65 her right foot, which she had claimed was work related. The trial court entered a judgment finding Hepburn to be totally-permanently disabled. On appeal, this court reversed the original judgment and remanded the case because the trial court had used an incorrect standard of review. This court instructed the trial court to apply, on remand, the "clear and convincing evidence" standard applicable in cumulative-stress-injury cases rather than the "substantial evidence" standard applicable in accidental-injury cases. After remand, the trial court entered a new judgment finding Hepburn to be permanently-totally disabled. Tallassee Super Foods appeals.
Hepburn worked in the delicatessen section of the Tallassee Super Foods grocery store. She ordinarily worked 8 to 10 hours per day, and most of that time she was standing. Hurricane Opal passed through the Tallassee area in October 1995. The week after Hurricane Opal, Hepburn worked approximately 127 hours in one week, serving food to workers who were restoring electrical power in the area. This was more than twice the number of hours she ordinarily worked. During this time, Hepburn testified that her right foot began to hurt and to swell. She reported her discomfort to her supervisor, Gene Lawrence. At Lawrence's instruction, Hepburn consulted her family practitioner, Dr. Robert Story, who referred her to a podiatrist, Dr. Gregory Dubay. Dr. Dubay diagnosed Hepburn with stress fractures, and later, based upon the diagnosis and test results provided by other physicians, Dr. Dubay diagnosed Hepburn with reflex sympathetic dystrophy as well. Tallassee Super Foods denied that Hepburn's conditions were related to her employment and denied her workers' compensation benefits. The matter proceeded to trial. The trial court entered a judgment in favor of Hepburn. However, in Hepburn I, this court determined that the trial court had applied the wrong standard of review.
In the case of an accidental injury, the standard of review for the trial court is "substantial evidence" indicating that the injury arose out of and in the course of employment. Initially, the trial court applied the substantial-evidence standard to this case. In Hepburn I, however, we determined that the evidence did not support a finding that Hepburn's injury was the result of an accident; rather, we concluded that the injury was cumulative in nature. The proper standard to be applied in a cumulative-stress or degenerative-injury case is "clear and convincing evidence." § 25-5-81(c), Ala.Code 1975.
After remand, the trial court entered an exhaustive 13-page order in which it made findings of fact, reviewed the evidence, and determined causation and the degree of disability. The trial court concluded that Hepburn had presented clear and convincing evidence that her injury arose out of and in the course of her employment.
Tallassee Super Foods first argues that the trial court erred in finding that Hepburn's injury to her foot arose out of and in the course of her employment. In order for an injury to be compensable under the Workers' Compensation Act, the accident causing the injury must arise out of and in the course of the employment. § 25-5-31, Ala.Code 1975. "`In the course of' refers to the time, place, and circumstances under which the accident took place." Kewish v. Alabama Home Builders Self Insurers Fund, 664 So.2d 917, 922 (Ala.Civ.App.1995) (citations omitted). "Arising out of" involves a causal relationship between the employment and the injury, such that the job performance was the cause and source of the injury. Id.
Tallassee Super Foods argues that in Hepburn I, this court established as the law of this case that Hepburn's injury did not arise out of and in the course of her employment. Such a factual determination would be beyond the authority of this court. This court may not reweigh the evidence presented to the trial court in a *66 workers' compensation case. 3-M Co. v. Myers, 692 So.2d 134, 137 (Ala.Civ.App. 1997). We could not reweigh the evidence in the first appeal to establish facts as the law of the case. It is true that in our opinion in Hepburn I, we agreed with Tallassee Super Foods that the evidence did not support the trial court's determination, but our paramount consideration in reversing the original judgment was the trial court's application of an incorrect standard of review. In Hepburn I, we remanded the case, saying, "the trial court must determine whether Hepburn presented clear and convincing evidence showing that her injury arose out of and in the course of her employment in accordance with the law, as set out above." 771 So.2d at 480.
It is not the function of this court to make determinations of fact; the trial court is the finder of fact. Furthermore, where the trial court makes findings of fact based upon ore tenus evidence, as in the present case, the trial court's findings of fact are afforded a presumption of correctness. Webb Oil Co. v. Holmes, 660 So.2d 1316 (Ala.Civ.App.1995). The trial judge is in a unique position to view the witnesses and to evaluate their credibility as to the testimony and other evidence presented; it is because of this unique ability to evaluate the credibility of the witnesses that the trial court's judgment based on ore tenus evidence is afforded a presumption of correctness on appeal. Ex parte Murphy, 670 So.2d 51 (Ala.1995). "In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." § 25-5-81(e)(2), Ala. Code 1975. Substantial evidence means "`evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996), quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
Tallassee Super Foods argues that the trial court erred in finding that Hepburn's injury arose out of and in the course of her employment. To prove liability under the Workers' Compensation Act, Hepburn must prove both legal and medical causation. Ex parte Trinity Indus., supra. To prove legal causation in a workers' compensation case where the injury is nonaccidental, the employee must show that she was exposed to a danger or risk materially in excess of that to which all persons are exposed in their everyday lives. Id. To prove medical causation, the employee must establish that the exposure or risk was in fact a contributing cause of the injury suffered. Id. Legal and medical causation must be determined on a case-by-case basis. Id. Additionally,
"The law is well settled that the trial court has wide discretion in the review of evidence and is not bound by particular medical evidence.
"`The trial court is not bound by expert testimony, but, having observed the claimant and having heard his testimony, it is able to exercise its own judgment in reaching its conclusions. Further, in arriving at its judgment, the trial court may consider all the evidence before it, as well as its own observations. The trial court may then interpret what it has heard and observed, according to its own best judgment.'"
3-M Co. v. Myers, 692 So.2d at 137 (citations omitted).
The trial court stated that "[t]he court finds by clear and convincing evidence that the excessive hours [Hepburn] spent on her feet [as a result of] Hurricane Opal exposed her to a danger in excess of the danger to which all persons *67 are ordinarily exposed." A trial court "`must use common sense, common reason, and common observation as well as a common knowledge of the usual acts of men and women under given circumstances.'" Patton v. Werner Co., 793 So.2d 817, 821 (Ala.Civ.App.2001) (quoting Ashurst v. State, 462 So.2d 999, 1006 (Ala. Crim.App.1984) (other internal citations omitted)). The trial court could determine from its own common sense and common knowledge that working 127 hours in one week is excessive. The court likewise could determine by drawing from its own everyday experiences that standing at work for that period of time exceeds the amount of standing to which people would ordinarily be exposed in everyday life. Thus, the evidence indicating that Hepburn worked 127 hours in one week supports a conclusion that she was exposed to a risk materially in excess of that to which all persons are exposed in everyday life. Therefore, we cannot say that the trial court erred in finding that Hepburn proved legal causation.
In its judgment, the trial court summarized testimony from Hepburn and expert witnesses, including Dr. Gregory Dubay, the treating physician for Hepburn's foot injury; Dr. Robert Story, Hepburn's general practitioner; Marilyn Tuck Oakes, a vocational-rehabilitation specialist; Dr. Stephen C. Hunter, whom Hepburn consulted for a second opinion; Dr. Ronald Rivard, a former orthopaedic surgeon who conducted tests on Hepburn; Russ Gurley, a vocational-rehabilitation specialist; and Gene Lawrence, Hepburn's supervisor, to whom she allegedly reported her injury. Much of this testimony regarded the extent of Hepburn's medical impairment caused by her injury rather than the cause of her injury.
Hepburn testified that her foot began hurting in October 1995, when she had worked 127 hours in one week. She testified that she had never experienced trouble with her foot before that time, other than a minor strain in 1992. Hepburn testified that the week before Hurricane Opal hit Tallassee, she had been working in the delicatessen department with no pain, swelling, or discomfort.
Dr. Dubay testified that, to a reasonable degree of medical certainty, Hepburn's injury was the result of her standing on her feet for excessive periods at work the week following the onslaught of Hurricane Opal. After summarizing the testimony of Dr. Dubay, the trial court stated in its judgment that "the exposure to the danger of injury, by excessive standing, was a contributing factor of [Hepburn's] injury for which benefits were sought." Dr. Hunter testified that Hepburn's description of the cause of her injury was not inconsistent with his diagnosis. Dr. Rivard had no opinion as to whether Hepburn was injured on the job. Hepburn's supervisor, Lawrence, testified that Hepburn was not standing on her feet for an excessive period of time, although he admitted that she worked 127 hours during the week following Hurricane Opal.
After considering all of the evidence contained in the record, we conclude that the trial court did not err in finding both legal and medical causation and in concluding that Hepburn's injury arose out of and in the course of her employment.
Judge Pittman in his special writing dissenting in part states that, because there was a "conflict in the evidence" as to whether the worker's injury arose out of and in the course of her employment, the worker did not carry her burden of establishing causation by clear and convincing evidence. However, we first point out that there was no "conflict in the evidence" as to the expert testimony. Dr. Dubay's testimony constituted evidence of causation; *68 Dr. Rivard's testimony simply provided no opinionand therefore no evidenceon the subject of causation. That is not a conflict. Compare Wal-Mart Store's, Inc. v. Kennedy, 799 So.2d 188, 197 (Ala.Civ. App.2001) (affirming a trial court's determination that the worker had presented clear and convincing evidence that her employment was a contributing cause of her condition; the worker's physician testified that the worker's condition "probably" arose out of her employment, and the court stated that § 25-5-81(c) does not require proof to an "absolute certainty"), with Tee Jays Mfg. Co. v. Stults, 723 So.2d 684, 686 (Ala.Civ.App.1998) (reversing a trial court's determination that the worker had presented clear and convincing evidence that her employment was a contributing cause of her condition when the worker's physician "could not say with reasonable medical certainty what did cause [the worker's] condition).
Next, the trial court specifically found Dr. Dubay's testimony credible. In contrast, the trial court stated two reasons for not relying on the testimony of Gene Lawrence, the worker's employer. The trial court specifically noted that Lawrence's testimony as to excessiveness was "unsubstantiated by any other evidence." It also noted that "Mr. Lawrence ... testified that he was in a self-insured group and that an on-the-job injury would directly affect his premium."
"[T]he law is settled that weighing evidence is not the usual function of an appellate court. This is especially true where, as here, the assessment of the credibility of witnesses is involved."
Knight v. Beverly Health Care Bay Manor Health Care Center, 820 So.2d 92, 102 (Ala.2001) (citations omitted).
Tallassee Super Foods also argues that the trial court erred in taxing costs against it. The taxation of costs in workers' compensation cases is within the discretion of the trial court, and its judgment will not be reversed on appeal absent a showing of an abuse of that discretion. § 25-5-89, Ala.Code 1975; Ex parte Ellenburg, 627 So.2d 398 (Ala.1993). This includes costs of expert witnesses. Star Rails, Inc. v. May, 709 So.2d 44, 46 (Ala. Civ.App.1997). We find no abuse of discretion in awarding costs in this case.
Based on the foregoing, the judgment of the trial court is due to be affirmed.
AFFIRMED.
YATES, P.J., concurs.
THOMPSON and MURDOCK, JJ., concur in the result.
PITTMAN, J., concurs in part and dissents in part.
PITTMAN, Judge, concurring in part and dissenting in part.
I concur in the main opinion insofar as it affirms the trial court's award of costs to Hepburn to cover the expenses of her trial counsel and expert witnesses. However, I write separately to express my concern with the main opinion's affirmance of the trial court's decision to deny Super Foods's motion to alter, amend, or vacate the judgment or, in the alternative, for a judgment as a matter of law or for a new trial. Although it is not the function of this Court to reweigh the evidence and under the ore tenus standard we are to afford the trial court's determination a presumption of correctness, I simply do not believe that Hepburn presented clear and convincing evidence that her injury arose out of and in the course of her employment. Although Dr. Dubay testified that Hepburn's injuries were the result of her standing on her feet for excessive periods while she was at work, Dr. Rivard stated in his *69 deposition that he had no opinion as to whether Hepburn was injured on-the-job, and Gene Lawrence, part-owner of Super Foods, testified that Hepburn was not standing on her feet for excessive periods during the time in which she claimed to have suffered her injury. Given this conflict in the evidence, I do not believe that Hepburn carried her burden. In this regard, I dissent from the main opinion's decision to affirm the trial court's order insofar as that order denied Super Foods's motion to alter, amend, or vacate the judgment.