Michele Spitzner Bess was performing her duties in the course of her employment for a Waffle House restaurant on March 6, 1998, when she was injured while placing meat into a lower freezer drawer. After she placed the meat in the drawer she stood up, striking her back on the open refrigerator door. As a result of the incident, Bess sustained a bruise and subsequently developed myofascial-pain syndrome and psychological infirmities, including depression, which, she claims, are directly related to this on-the-job injury.
Bess sued Waffle House, Inc., on November 9, 1998, seeking benefits and claiming that she had been permanently and totally disabled by the on-the-job injury. Waffle House answered, admitting that Bess was an employee and that she had suffered an on-the-job incident, but disputing the extent of the injuries Bess claimed to have suffered. After discovery was completed, the matter proceeded to a bench trial. At trial, the parties stipulated to the existence of the employer-employee relationship and to the fact that Bess provided timely notice of her injury to Waffle House. The issue in dispute at trial was the extent to which Bess's injuries were related to the on-the-job accident. The matter was tried, in part, on November 23, 1999, when the trial court received Bess's oral testimony, heard a reading of the depositions of Dr. Alvin Stinson III and Dr. Timothy Bunker, and accepted as exhibits associated treatment records. The trial was continued until June 8, 2000, at which time additional documentary evidence in the form of depositions and medical records was presented. On August 10, 2000, the trial court entered a judgment assigning Bess a 25% permanent partial impairment rating to the whole body based upon the physical injury alone and awarding benefits accordingly. The trial court further concluded in its judgment that Bess's psychological injury was not related to her on-the-job injury.
On August 21, 2000 Bess filed a postjudgment motion pursuant to Rule 59, Ala.R.Civ.P., which was denied by operation of law on November 20, 2000. See Rule 59.1, Ala.R.Civ.P. Bess filed an appeal to this court on November 17, 2000, and Waffle House filed a cross-appeal on December 1, 2000.
On appeal, Bess claims that the trial court's judgment is not supported by substantial evidence. When this court reviews the trial court's factual findings, its judgment based on those findings will not *Page 785 
be reversed if those findings are supported by substantial evidence. § 25-5-81(e)(2), Ala. Code 1975. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur. Co., 547 So.2d 870, 871
(Ala. 1989). In addition, this court has held:
 "Where the testimony conflicts, the trial court's findings are conclusive, if supported by the evidence. Acustar, Inc. v. Staples, 598 So.2d 943
(Ala.Civ.App. 1992). Also, when a trial court receives conflicting testimony, it, not this court, has a duty to resolve the conflict. Jones v. LeFlore, 421 So.2d 1287
(Ala.Civ.App. 1982). Furthermore, the trial court is not bound by expert opinions; instead, to arrive at its judgment, `the trial court may consider all the evidence before it, as well as its own observations of the witnesses. The trial court may then interpret what it has heard and observed, according to its own best judgment.' Gibson v. Southern Stone Co., 518 So.2d 730, 731 (Ala.Civ.App. 1987). Additionally, the assignment of the extent of disability is within the trial court's discretion and cannot be disturbed on appeal if there is evidence to support that decision. Genpak Corp. v. Gibson, 534 So.2d 312 (Ala.Civ.App. 1988)."
Golden Poultry Co. v. Staggs, 660 So.2d 1348, 1352 (Ala.Civ.App. 1995.)
At trial the parties stipulated as to the sequence of events. Waffle House initially sent Bess to Dr. Onelio Perdomo for treatment. Dr. Perdomo reported that Bess was complaining of pain in her left chest, arm, and back, with the primary concern being a pressure-like pain that was accompanied by sweating, nausea, and dizzy spells. Dr. Perdomo referred Bess to Dr. William Stewart at Northeast Orthopedic Clinic. Dr. Stewart performed a full-body bone scan, cervical X-rays, and a cervical MRI; the results of those tests were normal. Because Dr. Stewart had no surgical remedy to offer and Bess continued to complain of intense pain, he referred her to Dr. Seth Spotnitz, a neurologist, for evaluation and treatment. Dr. Spotnitz performed a nerve-conduction test on Bess's left side; that test revealed no objective neurologic deficits. Bess returned to Dr. Stewart, who referred her to Dr. Alvin Stinson, a specialist in physical medicine and rehabilitation. Dr. Stinson performed an MRI of the thoracic area, the specific location in which Bess was complaining of pain; the test results were normal. Dr. Stinson also prescribed physical therapy and Oxycontin, a powerful narcotic, to treat Bess's pain. In addition, Dr. Stinson performed one "trigger-point" injection, injecting a local anesthetic into a muscle area in which Bess was experiencing pain. Bess experienced a dramatically painful response to this injection and refused to allow Dr. Stinson to perform any further "trigger-point" injections.
Dr. Stinson testified in his deposition that Bess showed no improvement under his treatment, so he determined her to be at maximum medical improvement and ordered a functional capacity evaluation ("FCE") and an impairment rating. In his deposition, Dr. Stinson explained that the purpose of an FCE was to evaluate what type of work the patient was capable of performing. Dr. Stinson testified that the recommendation portion of the FCE report read, in part:
 "Due to several inconsistencies listed throughout the report, it is likely that Ms. Bess is capable of performing at a higher level than demonstrated."
(R. 767.) Further, Dr. Stinson testified that the report indicated that Bess exhibited *Page 786 
submaximal effort and that she did not even complete the test. Dr. Stinson testified in his deposition that he assigned Bess a three percent impairment rating because of the many inconsistencies in the FCE. In addition, Dr. Stinson testified that he was unable to make any objective findings as a cause for Bess's pain.
Dr. Stinson referred Bess to the Pain and Rehabilitation Institute, where she was evaluated by Daniel Doleys, Ph.D. Doleys's diagnosis was that Bess suffered from persistent soft-tissue and myofascial pain, possible personality disorder, and mild-to-moderate depression. In his letter to Dr. Stinson, Doleys stated: "[a]t this point the best that we can recommend would be admission to the residential program for a 2 week trial period with continuation contingent upon demonstrated improvement." Dr. Tim Bunker, a specialist in physical medicine and rehabilitation, also testified by deposition that he examined Bess on three occasions and that he concluded that she suffered from myofascial pain, depression, and sleep disorders and he believed that she had multiple social stressors.
Bess testified at trial that she had worked at the Waffle House restaurant where the injury occurred since 1977. She stated that she had been involved in an automobile accident in 1994 or 1995, in which an 18-wheel truck ran over the hood of her car; she sustained injuries to her right side as a result of the accident. She testified that she had never experienced pain to her left side until the March 1998 on-the-job injury she suffered at the Waffle House restaurant. She stated that since the incident she is in constant pain, she has frequent crying spells, she is unable to sleep well because of the pain, she is anxious about her bills because she is not working, and she is unable to play with her children. She testified that approximately three to four days per week she would not get dressed but would stay in her night clothes all day long. Bess stated that she had nine children, but that only two of her children — eight-year-old twins, actually live with her. Bess stated that her former husband also lived in the house with her and the twins. She explained that she had worked as a cook for the Waffle House restaurant, but stated that since the injury her pain prevented her from cooking.
Bess testified that she had experienced a traumatic and abusive childhood. On cross-examination, Bess admitted that as a child she suffered from beatings and mental abuse from her mother and sexual abuse from her step-father's brother and a male babysitter. Bess explained that she ran away from home and was placed in a foster home, and then placed in different facilities. She also stated that she had married an abusive husband when she was 17.
We conclude that there was substantial evidence to support the trial court's conclusion that Bess's depression and sleep disorder were unrelated to the March 1998 on-the-job injury.
Bess further argues that the trial court erred in awarding her a 25% permanent partial disability. She claims to be permanently and totally disabled. In its judgment, the trial court stated, in part:
 "Dr. Stinson assigned a three percent impairment rating which he based upon inconsistent FCE results and concluded there was nothing in the file to suggest that the Plaintiff suffered from any permanent physical injury, citing no objective findings to support Plaintiff's subjective complaints of pain. Dr. Daniel Doleys Ph.D. evaluated the Plaintiff at the Pain and Rehabilitation Institute noting that he felt Plaintiff's complaints *Page 787 
 were subjective in nature. Dr. Dennis Doherty also performed several neurological tests and numerous other physicians have examined the Plaintiff.
 "Upon deposition of the Plaintiff the Plaintiff offered no testimony as to a prior injury to her shoulder which was later proved by the facts of this case. Also it is noted that on February 20, 1998, the Plaintiff was involved in a traffic accident on Meighan Boulevard in Gadsden, Alabama, which contributed to her present condition."
We conclude that the record contains substantial evidence to support the trial court's determination. We conclude that there was substantial evidence to support the trial court's conclusion that Bess's soft-tissue pain, depression, and sleep disorders were unrelated to the March 1998 on-the-job injury.
Waffle House filed a cross-appeal, in which it did not challenge any portion of the trial court's judgment. Instead, Waffle House sought review of the trial court's exclusion of the deposition testimony of a psychologist, Dr. Robert Barth, in the event that this court reversed the trial court's judgment. Such a cross-appeal is known as a conditional cross-appeal and is considered to be moot in the event that the trial court's judgment is affirmed. See Williams v. Lide, 628 So.2d 531 (Ala. 1993). Because we affirm the judgment of the trial court insofar as it pertains to the disability award, the condition on which Waffle House's argument is predicated has not occurred; therefore we also affirm as to the cross-appeal. See Carroll Kenworth Truck Sales, Inc. v. Leach,396 So.2d 1044 (Ala. 1981).
Finally, Bess claims that, in computing her benefits and associated attorney fees, the trial court erred in calculating her benefits pursuant to the 25% permanent partial disability rating which it awarded her in its final judgment. She claims that the trial court incorrectly used her compensation rate of $161.65 instead of her average weekly wage, which was stipulated by the parties to be $242.46. Section 25-5-57(a)(3)g., Ala. Code 1975, provides in part:
 "For all other permanent partial disabilities not above enumerated, the compensation shall be 66 2/3% of the difference between the average weekly earnings of the worker at the time of the injury and the average weekly earnings he or she is able to earn in his or her partially disabled condition, subject to the same maximum weekly compensation as stated in Section 25-5-68. If a permanent partial disability, compensation for which is not calculated by use of the schedule in subdivision (a)(3) of this section, follows a period of temporary total disability resulting from the same injury, the number of weeks of the temporary total disability shall be deducted from the number of weeks payable for the permanent partial disability. Compensation shall continue during disability, but not beyond 300 weeks."
In its brief, the Waffle House concedes that the trial court should have calculated Bess's benefits and associated attorney fees by using the average weekly wage figure of $242.46 as stipulated, instead of the compensation rate of $161.65. We agree. According to the trial court's 25% disability award, it should have used the average weekly wage figure and multiplied that figure by the 25% disability figure and then multiplied the result by 66 2/3%. According to our calculation, the weekly permanent disability payments would be $40.41. Therefore, had the trial court correctly calculated the benefits, the accrued and the future permanent partial disability benefits would be substantially higher than the amount awarded by the trial court, as *Page 788 
would the associated attorney fee. The portion of the judgment pertaining to the dollar amount of the present and future disability award and the associated attorney fee is reversed and the matter is remanded to the trial court for a recalculation of these benefits in accordance with this opinion and with the assistance of the parties. The remainder of the trial court's judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., CRAWLEY and MURDOCK, JJ., concur.
THOMPSON, J., concurs in the result.