863 So.2d 1099 (2003)
Ex parte ALABAMA POWER COMPANY.
(In re Ed McCormick v. Alabama Power Company).
2011231.
Court of Civil Appeals of Alabama.
May 2, 2003.
*1100 William P. Cobb II of Balch & Bingham, L.L.P., Montgomery; Aaron L. Dettling of Balch & Bingham, L.L.P., Birmingham; and George K. Elbrecht, Monroeville, for petitioner.
Max Cassady of Cassady & Cassady, P.C., Evergreen; and Philip J. Sanchez IV, Monroeville, for respondent.
Robert A. Huffaker and P. Keith Lichtman of Rushton, Stakely, Johnston & Garrett, P.A., Montgomery, for amicus curiae Medical Association of the State of Alabama.
PITTMAN, Judge.
Alabama Power Company ("the employer") petitions for a writ of mandamus directing the Monroe Circuit Court to vacate its order permitting Ed McCormick ("the employee") to videotape a functional-capacities evaluation ("FCE") ordered by a physician in a pending workers'-compensation action involving the parties. For the reasons stated herein, we grant the employer's petition and issue the writ.
We discern the following pertinent facts from the exhibits to the employer's petition and the employee's response. The employee filed a civil action in the Monroe Circuit Court against the employer in August 2001, seeking benefits under the Alabama Workers' Compensation Act ("the Act") based upon three alleged workplace injuriesto his knee, his right shoulder, and his left shoulder in 1994, 1995, and 1999, respectively. Dr. Richard D. Meyer, an authorized orthopedic surgeon to whom the employee had been referred for evaluation and treatment for the 1999 left-shoulder injury, was asked to give an opinion concerning the extent of the employee's physical impairment resulting from that injury. On September 13, 2001, in response to that request, and as a means of diagnosing what treatments and work restrictions would be medically necessary, Dr. Meyer prescribed an FCE for the employee, which Dr. Meyer described as being "generally relied upon by physicians in [his] field of practice as impartial, objective measurements of a patient's physical abilities and limitations." According to Dr. Meyer's medical records, Dr. Meyer concluded that "[i]t would ... be reasonable to go ahead and get an FCE, certainly looking at the coefficients of variance and see if we cannot find something that [the employee] would be capable of returning to work [sic]."
In response to Dr. Meyer's recommendations, the employer attempted to schedule an FCE for the employee on four separate occasions during September and October 2001 with Rehab Associates, an occupational and industrial physical-therapy provider with locations nationwide; however, the employee failed or refused to *1101 attend each appointment scheduled by employer. Instead, the employee procured an FCE from another provider and presented a report from that FCE to Dr. Meyer at an appointment on December 13, 2001. However, Dr. Meyer, after reviewing the report of that FCE, opined that based upon his observations of the employee's upper-body mass and strength, he had "some doubts as to the validity" of that FCE; he also noted that he would wait to see a report of "the FCE ordered by the worker's comp carrier" before expressing an opinion concerning the employee's impairment.
On January 17, 2002, the employee filed a motion for an order permitting the videotaping of the FCE prescribed by Dr. Meyer. In that motion, the employee averred that the trial court had the discretion to allow the videotaping of a discovery deposition and contended that there was no reason why an FCE should not also be videotaped. The employee did not attend an FCE scheduled at Rehab Associates for January 21, 2002, four days after he filed his motion. In response to the employee's motion, the employer submitted an affidavit of Tony Bridges, a physiologist and certified disability examiner working at Rehab Associates. Bridges stated that Rehab Associates had a policy of not allowing the videotaping of FCEs and opined, among other things, that "it [was] critical to the success of [an] FCE that it be conducted in an environment where outside influences and distractions are minimized" and that allowing an FCE to be videotaped "would compromise the integrity of the valuation and its results."
On March 25, 2002, the trial court conducted a hearing on the employee's motion; that court then entered an order stating that the FCE could be videotaped. The employer filed a motion on April 19, 2002, requesting that the trial court revisit its decision to allow the FCE to be videotaped. In support of its motion, the employer submitted an affidavit of Dr. Meyer in which he stated that he had prescribed an FCE for medical and rehabilitative purposes and opined that videotaping the FCE "would render it more of an adversary tool for litigation purposes" and would "seriously undermine the reliability of the result of the FCE." After conducting a hearing on May 29, 2002, at which the employer's case-management nurse testified, the trial court entered an order on August 22, 2002, denying the employer's motion, concluding that the evidence submitted by the employer was not persuasive and opining that "the courts of this state should have at least one opportunity to actually observe what actually occurs" at an FCE because, that court said, "[t]he FCE is such an important process in determining the functional capacity of an injured worker."
Pursuant to Rule 21, Ala. R.App. P., the employer filed its petition for a writ of mandamus in this court on September 17, 2002, requesting that this court issue a writ of mandamus directing the trial court to vacate its orders of March 25, 2002, and August 22, 2002, and requiring the employee to undergo an FCE, which would not be videotaped, at a facility chosen by the employer, as ordered by Dr. Meyer. This court has jurisdiction pursuant to § 12-3-10, Ala.Code 1975, affording this court exclusive appellate jurisdiction to issue extraordinary writs in workers'-compensation actions, and we have solicited briefs from the parties concerning the issues raised in the petition. In the absence of any objection by the employee in his responsive brief, we deem the employer's petition in this case to have been filed within a reasonable time, as required by Rule 21(a), Ala. R.App. P. Compare Ex parte Troutman Sanders, LLP, [Ms. 1011812, Feb. 21, 2003] ___ So.2d ___ (Ala.2003) (dismissing a mandamus petition filed 79 days and 45 days, respectively, *1102 after original entry of two orders aggrieving the petitioner where the issue of the timeliness of the petition was properly challenged by the respondents).
The core issue raised by the employer's petition is whether a trial court, in a worker's-compensation action, may impose conditions upon conducting an FCE that conflict with those prescribed by an employee's treating physician. Although certain Alabama cases have addressed issues involving disputes arising directly between an employer and an employee regarding the necessity of particular medical treatment or examinations, the question raised in this case is one of first impression in Alabama, and neither the parties nor amicus curiae have provided authority directly on point.
Section 25-5-77(a), Ala.Code 1975, a portion of the Act, provides, among other things, that an employer of an injured worker shall timely pay for that worker's "reasonably necessary medical and surgical treatment and attention, physical rehabilitation, medicine, [and] medical and surgical supplies ... as the result of an accident arising out of and in the course of the employment." See also § 25-5-77(h). That duty to pay is accompanied under the Act by a corresponding power in the employer to exercise considerable control over the medical care for which it must pay, including the right to choose the employee's physician in the first instance and the right to compel the injured employee to submit to an examination by that physician at all reasonable times. See § 25-5-77(a) and (b), Ala.Code 1975. Although the Act provides that the employee may advise the employer if he or she is dissatisfied with the physician designated by the employer, the employee's remedy in such a circumstance is to select another physician from a panel or list of available physicians (usually four) specified by the employer. See § 25-5-77(a), Ala.Code 1975. Whether designated in the first instance by the employer or chosen by the employee from a so-called "panel of four" provided by the employer, the selected physician becomes the employee's authorized treating physician under the Act.
Of course, the physician is empowered under the Act to treat the employee for so long as is reasonably necessary and to refer the employee to other medical providers for reasonably necessary treatment. See, e.g., Hudson Indus. v. Harrell, 484 So.2d 1099 (Ala.Civ.App. 1986); Blue Bell, Inc. v. Nichols, 479 So.2d 1264 (Ala.Civ.App.1985). However, the Act specifies certain other roles that an authorized physician must perform. Section 25-5-77(b) states that the authorized physician shall, upon written request of either the employer or employee, "furnish... a written statement of his or her professional opinion as to the extent of the [employee's] injury and disability." Moreover, that physician "may be required to testify as to any knowledge obtained by him or her in the course of the treatment or examination as the treatment or examination related to the injury or the disability arising therefrom." Id. These additional roles specified by the Legislature indicate that the duty of the authorized physician is to simultaneously further two objectives of the Act: making the employee as well as possible and assessing the extent to which the employee is capable of earning a living after a workplace injury. As the Minnesota Supreme Court stated, construing the medical-benefits provision of that state's workers'-compensation laws (upon which our Act was originally based),[1] "[w]hile the `primary *1103 purpose of medical care and treatment is to return the employee, as nearly as possible, to his or her preinjury state of wellness,' a `secondary' aim of medical care and treatment is a return to work." Monteith v. Dobbs Pro Staff, 538 N.W.2d 691, 692 (Minn.1995) (quoting Langa v. Fleischmann-Kurth Malting Co., 481 N.W.2d 35, 37 (Minn.1992)); accord, Ex parte Wal-Mart Stores, Inc., 794 So.2d 1085, 1088 (Ala.2001) (quoting City of Auburn v. Brown, 638 So.2d 1339, 1340 (Ala. Civ.App.1993), quoting in turn 2 Arthur Larson, The Law of Workmen's Compensation § 61.12.(b) (1989), and noting Act's goal of "achieving the maximum standards of rehabilitation").
Although the Act does not define the term "functional capacity evaluation," an FCE may properly be defined as "a systematic comprehensive assessment" of one's "overall strength, mobility, endurance and capacity to perform physically demanding tasks, such as standing, walking, lifting, crouching, stooping or bending, climbing or kneeling." 20 C.F.R. § 220.11 (2002) (federal regulation governing the determination of disability under the Railroad Retirement Act); see also Ala. Admin. Code R. 480-5-5-.02(29) (Department of Industrial Relations regulation defining an FCE as a "[p]rocess to evaluate the injured worker's functional and/or vocational status"). While an employer, in certain circumstances, might properly seek an FCE as a discovery tool to determine an employee's residual vocational capacity under the authority of Rule 35, Ala. R. Civ. P., which governs physical examinations of parties to civil actions, the FCE under review in this case is not governed by Rule 35. Rather, the FCE at issue has been ordered by the employee's treating physician, Dr. Meyer, as an aid to his treatment and evaluation of the employee's claimed workplace injury.
The medical records of Dr. Meyer attached to the employer's mandamus petition indicate that on September 13, 2001, Dr. Meyer prescribed studies on the employee's right side to identify the possible cause of sudden and intermittent pain reportedly radiating down the employee's right arm. Dr. Meyer also noted that the employee had a strong deltoid muscle, strong external rotators, and strong biceps, and exhibited no intrinsic weakness in his hand; however, he opined that there was nothing that could be done surgically to improve the employee's condition. Dr. Meyer noted that "[i]t would also be reasonable to go ahead and get an FCE ... and see if we cannot find something that he would be capable of returning to work [sic]" and added that he would allow the employer's nurse to specify an appropriate place for the FCE to be conducted.
In an affidavit filed in support of the employer's motion requesting that the trial court vacate its order allowing the videotaping of the FCE Dr. Meyer had prescribed, Dr. Meyer stated, in pertinent part:
"3. As part of my duties as [the employee's] treating physician, I have been asked to render an opinion as to the physical impairment, if any, suffered by [the employee] as a result of his left shoulder injury. I am routinely asked to render such opinions. One of the diagnostic tests I ordinarily rely upon in making such determinations is a functional capacity evaluation, or FCE. Properly-conducted FCE[s] are generally relied upon by physicians in my field of practice as impartial, objective measurements of a patient's physical abilities and limitations.
"4. I have prescribed a non-videotaped FCE for [the employee].

*1104 "5. I prescribed the FCE for [the employee] for medical purposes, including determining if (and what) additional treatment is needed for [the employee] and determining what restrictions are medically necessary for [the employee]. Further, I prescribed the FCE for rehabilitative purposes, for the purpose of determining if (and what) rehabilitation or work is appropriate for him.
"6. Based upon my personal review of [the employee's] medical condition, it is my opinion that an FCE is particularly appropriate for his type of injury. Because the subjective complaints of pain are very difficult to accurately review and those are the chief complaints of [the employee], I believe that there is a particular need to have an FCE that is not videotaped.
"7. Based upon my treatment of [the employee], my review of the medical records relating to my treatment of him, my medical reasons for prescribing an FCE in this situation, and my understanding and appreciation for the most effective way to conduct an FCE, it is not only my opinion that videotaping any FCE is likely to compromise the reliability of the results obtained and jeopardize the medical purposes for conducting the test, it is also my opinion that this particular FCE should not be videotaped....
"8. I understand that [the employee] has asked that his FCE be video-recorded. In my opinion, making a videotape of the FCE would seriously undermine the reliability of the result of the FCE. I request FCE[s] to aid me in forming medical opinions. In my opinion, videotaping an FCE would render it more of an adversary tool for litigation purposes, rather than a diagnostic tool for my own medical purposes. This, in my opinion, diminishes the scientific validity of the test. In forming medical opinions, I would not knowingly rely on an FCE that had been videotaped."
Although we recognize the role that, pursuant to § 25-5-77(a), trial courts properly fill with respect to deciding matters concerning medical services proposed to be rendered where there is an active dispute between an employer and an employee regarding the necessity and value of particular services, there is no dispute in this case that an FCE was prescribed and that an FCE is an integral component of Dr. Meyer's ongoing treatment and assessment of the employee. Cf. Monteith, 538 N.W.2d at 692 (noting that treating physician would not revise earlier disability estimate without a new FCE and holding that cost of new FCE was payable by employer as a "reasonably required medical service"). Rather, the dispute between the parties concerns solely the manner in which the FCE will be conducted. According to the affidavit of the employee's authorized treating physician in this case, the trial court's order permitting the videotaping of the FCE would render it untrustworthy, especially in light of the subjective nature of the symptoms of which the employee has complained. In other words, if the trial court's order is permitted to remain in force, the FCE will be of little or no value to the physician who prescribed it.
Under the particular circumstances of this case, where an injured employee's authorized treating physician has expressly directed the employee to undergo an FCE so that the physician may fulfill his duties of treating the employee and assessing any disability the employee may have, the trial court should not have mandated that that FCE be administered in a manner contrary to the directions of the authorized treating physician. In intruding into the medical discretion of Dr. Meyer, the trial court went beyond its authority to decide *1105 disputes governing the necessity of particular medical services in workers'-compensation actions. The trial court is therefore instructed to vacate its order permitting the videotaping of the FCE prescribed by Dr. Meyer and is instructed to direct the employee to present himself for an FCE at the facility designated by Dr. Meyer.
PETITION GRANTED; WRIT ISSUED.
CRAWLEY and THOMPSON, JJ., concur.
MURDOCK, J., concurs in the result.
YATES, P.J., dissents.
MURDOCK, Judge, concurring in the result.
I concur in the result reached by the majority. Based on the statute governing this matter, however, I would not frame the issue presented by this petition as whether the trial court may require that the examination of the employee be conducted in a manner contrary to the manner prescribed by the authorized treating physician. Whether the particular examination at issuethat is, an unvideotaped functional capacity evaluation ("FCE") should be allowed to go forward, is not dependent, solely or per se, on whether the authorized treating physician under § 25-5-77(a), Ala.Code 1975, has prescribed it. Rather, the test for whether an examination prescribed by the authorized treating physician, or requested by the employer, may be conducted is whether the test, as so prescribed or requested, is "reasonable." Section 25-5-77(a) contemplates the provision of "reasonably necessary medical and surgical treatment and attention, physical rehabilitation," etc. (emphasis added). Section 25-5-77(b) requires an injured employee to "submit to examination by the employer's physician at all reasonable times." (Emphasis added.) Moreover, § 25-5-77(b) states that if an injured employee "refuses to comply with [a] reasonable request for examination, or refuses to accept the medical service or physical rehabilitation, which the employer elects to furnish," the right to compensation under the Act shall be suspended. (Emphasis added.) In the present case, I do not see substantial evidence in the record to support the conclusion that the particular examination at issuean unvideotaped FCEis not reasonable as a matter of law.[2]
In her dissent, Presiding Judge Yates observes that "[t]he main opinion relies primarily upon the testimony of Dr. Meyer that the videotaping of the FCE would render the FCE unreliable." 863 So.2d at 1109 (Yates, P.J., dissenting). Judge Yates then concludes:
"However, we note that the trial court has wide discretion in the review of evidence in a workers' compensation case *1106 and is not bound by particular medical evidence. Tallassee Super Foods v. Hepburn, 819 So.2d 63 (Ala.Civ.App. 2001). The trial court considered all of the evidence presented and determined in a well-reasoned order that McCormick was entitled to have the FCE videotaped."
863 So.2d at 1109 (Yates, P.J., dissenting).
While the testimony of Dr. Meyer, which was presented by the employer, is certainly probative as to the issue of whether it would be reasonable or unreasonable to videotape the FCE, it is important to emphasize that it was not the employer's burden of proof to show that conducting the FCE without videotaping it was reasonable. Rather, it was the employee's burden of proof to show that conducting the FCE without videotaping it was unreasonable. As noted, the employee did not offer sufficient evidence to sustain that burden.
With respect to the issue of trial-court discretion, if this case involved a discovery dispute under Rule 35, Ala. R. Civ. P., then the trial court would have had discretion to control the manner in which that discovery was to be conducted, a discretion the court does not possess under the provisions of § 25-5-77. See Ex parte Wal-Mart Stores, Inc., 729 So.2d 294, 296 (Ala.1999) (quoting Napier v. McDougal, 601 So.2d 446, 447 (Ala.1992), and noting that a trial court has "`broad and considerable discretion in controlling the discovery process and in making rulings on all matters pertaining to discovery,'" and holding that the trial court did not abuse its discretion in its ruling on a Rule 35 motion); cf. Ex parte Wisconsin Physicians Serv. Ins. Corp., 800 So.2d 588, 592 (Ala.2001) (acknowledging a trial court's "broad latitude in matters pertaining to discovery" and its discretion to decide whether a deposition should be videotaped). If this were a discovery dispute, the employee's argument that there was a reason for the trial court's decision would be apposite. But the examination in question is one to be conducted under the provisions of § 25-5-77(a) and/or § 25-5-77(b), and the question therefore is not whether the examination chosen by the court (i.e., a videotaped FCE) is reasonable, but whether the examination prescribed by the physician and requested by the employer (i.e., an FCE without videotaping) is reasonable. While an unvideotaped examination obviously is not the type of examination the trial court would choose, there is insufficient evidence in the record to support the conclusion that it is not a reasonable choice by the physician and the employer. Under the applicable statute, therefore, the trial court was without authority to enter its order.
YATES, Presiding Judge, dissenting.
Because I do not believe that Alabama Power is entitled to the relief sought, I must respectfully dissent from the main opinion.
Alabama Power seeks a writ of mandamus directing the Circuit Court of Monroe County to vacate its order permitting McCormick to videotape a functional capacities evaluation ("FCE") ordered by his treating physician in a pending workers' compensation case. The issue raised by this petition appears to be one of first impression. We note that a writ of mandamus is an extraordinary writ and will issue only when "(1) the petitioner has a clear legal right to the relief sought; (2) the respondent has an imperative duty to perform and has refused to do so; (3) the petitioner has no other adequate remedy; and (4) this Court's jurisdiction is properly invoked." Ex parte Flint Constr. Co., 775 So.2d 805, 808 (Ala.2000).
McCormick's authorized treating physician, Dr. Richard D. Meyer, ordered an FCE for McCormick; the FCE was scheduled *1107 to be done at Rehab Associates. McCormick moved the court for an order allowing the FCE to be videotaped. In opposition to McCormick's motion, Alabama Power presented the affidavits of Dr. Meyer and Tony Bridges, a physiologist employed at Rehab Associates. Dr. Meyer stated that he had prescribed an FCE for medical and rehabilitative purposes and that videotaping the FCE would "seriously undermine the reliability of the result of the FCE" and "would render it more of an adversary tool for litigation purposes." Bridges stated that Rehab Associates has a policy against videotaping FCEs and stated that "it [was] critical to the success of [an] FCE that it be conducted in an environment where outside influences and distractions are minimized" and that allowing an FCE to be videotaped "would compromise the integrity of the valuation and its results."
Following a hearing, the trial court entered an order allowing McCormick to videotape the FCE. The trial court stated in its order:
"1) The use of a videotape camera to document procedure and events is now common throughout the United States. Commercial retail stores routinely videotape customers and employees. Highly complex medical surgical procedures are frequently shown on educational channels on television. Courts routinely allow the videotaping of the most important of legal proceedings. Indeed, since at least 1991, Alabama Courts have been governed by the Alabama Rules For Using Videotape Equipment to Record Court Proceedings. (See generally, Ala. R.U.V.E.).
"(2) The Court notes that the use of FCE evidence is now commonplace in workers' compensation cases. The Court commonly hears depositions read into evidence during which the authorized treating physician defers to the FCE for the purpose of establishing the functional capacity of the injured worker. In this manner, the expert opinion of the FCE facility regarding the injured worker's functional ability frequently becomes the expert opinion of the authorized treating physician. For instance, in Ex parte Wal-Mart Stores, Inc., 794 So.2d 1085 [, 1086 (Ala.2001) ], the Alabama Supreme Court quoted the following medical note from a physician who questioned the sincerity of his or her patient based on an FCE reporting `inconsistencies throughout the test' and `magnified illness behavior':
"`ASSESSMENT/PLAN: At this point, we will get this information to Wal-Mart and they can help determine her job position. There was evidence of inconsistencies throughout the test as noted in the functional capacity evaluation. She also scored 12/16 on the Waddell's questionnaire which is in the maximum range for magnified illness behavior. It is possible that greater lifting capabilities are possible and this could be evaluated at a later date. She is at maximum medical improvement with a 3% impairment rating to the body as a whole.'
"See also, Bess v. Waffle House, Inc., [824 So.2d 783 (Ala.Civ.App.2001) ] (`Dr. Stinson testified in his deposition that he assigned Bess a three percent impairment rating because of the many inconsistencies in the FCE.'); Labinal, Inc. v. Alphord, 767 So.2d 362[, 364 (Ala.Civ. App.2000) ] (`Mark Mashburn, a physical therapist, performed a functional-capacity evaluation on Alphord on April 11, 1997.... Dr. Robinson testified that he agreed with and "signed off" on the impairment rating and the restrictions assigned to Alphord by Mashburn.') [;] [Brumett] v. Everywhere Trucking Co., 741 So.2d 1086[, 1090 (Ala.Civ.App. 1999)] (`Joseph M. Miller, a licensed *1108 professional counselor in Florida, testified by deposition that he had performed a functional capacity evaluation. ... He also stated in his functional capacity evaluation that Brumett "exhibited symptom exaggeration behavior [and that he] passed only 19/38 validity criteria during the functional capacity evaluation, 50%, which suggests voluntary submaximal effort."'); Sprinkle v. Baldwin Pole Leasing, 733 So.2d 444 [, 445 (Ala. Civ.App.1999) ] (`Sprinkle participated in a functional capacities evaluation, which showed that he could perform jobs requiring light to medium duty. His treating physician agreed with that assessment.'); Lindsey v. Watson Van Lines, 722 So.2d 774[, 776 (Ala.Civ.App. 1998) ] (`Lindsey's primary treating physician, Dr. Robert Bradley, testified in his deposition that a functional capacity evaluation conducted on Lindsey showed that he was not using his best effort in performing the tests making up the evaluation.'); Southern Lifestyle Homes v. O'Rear, 628 So.2d 645[, 647 (Ala.Civ. App.1993) ] (`Dr. Sherrill referred O'Rear to TriCare Rehabilitation Center (TriCare) for a "functional capacities evaluation" to determine his suitability for a work-hardening program. Dr. Andrew Rozsa, a clinical psychologist and director of TriCare, testified that O'Rear performed poorly on functional [capacities] evaluations administered at Tri-Care. However, Dr. Rozsa stated that he felt O'Rear was poorly motivated and had not put forth maximum effort. Dr. Rozsa said that while he did not believe O'Rear was malingering, he felt that he was engaging in "symptom magnification."').
"3) The reliability of FCE findings is thus of paramount importance in workers' compensation cases. Residual functional ability is a core issue, if not the core issue, in a workers' compensation case. The actual FCE examination itselfbeing the basis of the functional limitationspurports to be the truth-finding process of the worker's true functional capacity. The importance of the FCE, standing alone, was almost enough to reverse a trial court's ore tenus finding of permanent and total disability in a recent case:
"`Wal-Mart argues that the trial court erred in determining that Baker was permanently and totally disabled. Although this court might not have reached the same result, given the evidence regarding Baker's submaximal efforts and symptom magnification on the FCE tests, we cannot say that the trial court erred.' [Wal-Mart Stores, Inc. v. Baker, 751 So.2d 519 (Ala.Civ.App.1999) ].
"4) Ultimately, however, the judiciary of the State of Alabama conducts the final truth-finding process. To that end, the Court is not persuaded by the defendant Alabama Power's argument that the videotaping process will cause the plaintiff to give less than truthful effort, more effort, or any different effort than the plaintiff will give at an FCE that is not videotaped. The cliche that a picture paints a thousand words, while worn to the threads, is appropriate. The FCE is such an important process in determining the functional capacity of an injured worker, it seems that the Courts of this State should have at least one opportunity to actually observe what actually occurs.
"5) Finally, it should be noted that Alabama Power filed an affidavit from the FCE facility. The affidavit from the FCE facility is not persuasive. It sets forth no medical reason why the FCE should not be videotaped. It communicates no logical analysis of why an FCE should not be videotaped.

*1109 "6) Alabama Power also filed an affidavit from the company physician authorized by Alabama Power. The affidavit of both makes a conclusory assertion that the FCE should not be videotaped. In a workers' compensation matter, a trial court is not bound by the opinions of expert witnesses, even if the testimony of those witnesses is uncontroverted. Ex parte Beaver Valley Corp., 477 So.2d 408, 411 (Ala.1985). The affidavit executed by the physician does not pertain to medical treatment to be rendered by that physician, nor medical treatment to be rendered by any facility. An FCE is primarily an assessment of functional capacity, and, in this instance, would not be conducted within the confidential confines of the physician-patient relationship.
"7) At the last hearing on this issue, the defendant Alabama Power appeared in Court with its case management nurse. The plaintiff called the case management nurse as an adverse witness and cross-examined her regarding her involvement, if any, in the FCE process. Alabama Power claimed privilege with respect to some of her conversations with Alabama Power's attorney.
"8) In reaching the decision to allow the FCE to be videotaped, the Court has considered on an ore tenus basis the testimony of the Alabama Power case management nurse. The Court finds that her ore tenus testimony, standing alone or considered with the affidavit of the physician, is not sufficient to prohibit a videotape of the FCE process."
The main opinion relies primarily upon the testimony of Dr. Meyer that the videotaping of the FCE would render the FCE unreliable. However, we note that the trial court has wide discretion in the review of evidence in a workers' compensation case and is not bound by particular medical evidence. Tallassee Super Foods v. Hepburn, 819 So.2d 63 (Ala.Civ.App. 2001). The trial court considered all of the evidence presented and determined in a well-reasoned order that McCormick was entitled to have the FCE videotaped. I believe that Alabama Power has failed to demonstrate that it has a clear legal right to the relief sought; therefore, I dissent.
NOTES
[1] "Our Workmen's Compensation Laws were adopted from those of Minnesota and the Minnesota construction of their laws is of persuasive value." Eley v. Brunner-Lay Southern Corp., 289 Ala. 120, 125, 266 So.2d 276, 280-81 (1972).
[2] As this court noted recently: "In most cases, an employee will not have a right to medical treatment not recommended by either the initial or second authorized physician. However, where an employee has received recommendations from both the initial and the second authorized treating physicians in accordance with the procedures outlined in § 25-5-77(a), and the employee is able to prove that the treatment recommended by the authorized physicians does not fall within the parameters of what would be `reasonably necessary' to treat his or her injury or illness," he or she may be able to obtain judicial relief.

Ex parte Southeast Alabama Medical Center, 835 So.2d 1042, 1046 n. 4 (Ala.Civ.App.2002) (citations omitted). For examples of cases discussing what may be required in order to prove that a given examination or treatment is not reasonable, see Jimoco, Inc. v. Smith, 777 So.2d 716 (Ala.Civ.App.2000); Health Care Authority of City of Huntsville v. Henry, 600 So.2d 324 (Ala.Civ.App.1992); Avondale Mills v. Tollison, 52 Ala.App. 52, 289 So.2d 621 (1974); Elbert Greeson Hosiery v. Ivey, 472 So.2d 1049 (Ala.Civ.App.1985); Gulf States Steel Co. v. Cross, 214 Ala. 155, 106 So. 870 (1926).